Affirmed and Memorandum Opinion
filed December 17, 2009.

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-00657-CR



Sonny Ray
Dempsey, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 185th District Court

Harris County, Texas

Trial Court
Cause No. 1119717



 

MEMORANDUM OPINION 

Sonny Ray Dempsey was convicted of the felony offense
of aggravated robbery and sentenced to twenty-five years’ confinement in the
Institutional Division of the Texas Department of Criminal Justice.  Dempsey
appeals the trial court’s judgment.  He contends the trial court erred in
allowing the prosecution to present evidence of extraneous offenses to the
jury.  Dempsey also asserts the trial court erred in permitting a police
officer to testify about his truthfulness.  Finally, Dempsey contends the
evidence at trial is factually insufficient to support his conviction.  We
affirm.

I

            On May 29, 2007,
Houston Police Department (“HPD”) officer Christopher Kelly was dispatched to
conduct a hospital check at Ben Taub Hospital.  Officer Kelly testified a
hospital check is performed when a person goes to the hospital because he has
been assaulted and needs to file a report.  When he arrived at the hospital,
Officer Kelly spoke with Wayne Wright, the complainant, about the extensive
injuries to his face and head.  Officer Kelly testified the complainant’s injuries
included a long gash from the back of his head down to the base of his neck,
extensive bruising on the right side of his face, gashes on the lower part of
his right leg, and a swollen and bruised nose.  Officer Kelly stated the complainant
said he was beaten and then robbed of his wallet, cell phone, credit cards,
keys, and vehicle, a PT Cruiser.  Officer Kelly also testified the complainant told
him a person named Kathy was involved in the robbery.  

             The complainant
testified he was friends with Katherine (“Kathy”) Alvarez.  Alvarez was an
exotic dancer at the Ritz and Sugar’s, clubs he often frequented.  The
complainant stated on the day he was robbed, he and Alvarez planned to meet
after she finished working at the Ritz.  While the complainant waited for
Alvarez to call him, he went to Sugar’s to sell prescription pills—Vicodin and
Xanax—to the club’s employees and clients.  He testified that when he arrived
at the club, he noticed Sonny Ray Dempsey, the appellant, was sitting at a
table with another white male.  He stated the two men approached him and asked
him if he “had a problem.”   The complainant testified he told Dempsey and the
other man he did not have a problem with them, and they subsequently went back
to their table.  

The complainant explained that he was able to
identify Dempsey at the club that night because he had an altercation in the
Sugar’s parking lot with Dempsey and a man known as Big Mike one week before
the robbery.  Dempsey objected to the testimony on the grounds that his
fistfight with the complainant constituted an extraneous offense.  The court
allowed the testimony, but only after it instructed the jury about the proper
use of the testimony—non-propensity purposes.  The complainant testified before
the fight in the parking lot he had a conversation with Big Mike about his
prescription pills.  He also stated he had previously instructed Alvarez to
sell prescription pills to Dempsey.

After Dempsey approached the complainant, the
complainant testified Alvarez “showed up” at Sugar’s, greeted him, and then approached
Dempsey’s table.  The complainant stated Alvarez continuously stopped at
Dempsey’s table throughout the night to speak with Dempsey.  The complainant
testified he and Alvarez left the club together at about 2:00 a.m. in his PT
Cruiser, and they stopped at a convenience store on their way to Alvarez’s apartment. 
Once in her apartment, the complainant hid his wallet and keys because he “was
at a stripper’s house” and did not trust Alvarez.  He stated that when he went
to the bathroom, he was suddenly hit in the forehead with a bat.  The
complainant testified he saw Dempsey holding the bat.  He explained he stumbled
to the bedroom and was hit again.  Throughout the beating, the complainant
testified he was both hit with the bat and kicked repeatedly.  The complainant
stated there was another man with Dempsey, and they both demanded his car keys
and wallet.  The complainant testified Alvarez found his car keys and wallet
and told him, “I got you bitch.”  

Alvarez testified she purposely set up the
complainant the night he was beaten and robbed.  She stated she suspected the
complainant stole money from her purse, and Dempsey told her the complainant
stole money from his girlfriend Brittany.  She explained she was upset and
wanted to “teach him a lesson” for stealing money.  But she testified she only
set up a fistfight, and she never knew Dempsey planned to beat and rob the
complainant.  Alvarez stated the night of the incident she gave Dempsey the
keys to her car and residence.  She testified she brought the complainant back
to her apartment, and he got high on prescription pills.  Contrary to the
complainant’s testimony, Alvarez testified the complainant could not have
walked into the bathroom because he was passed out on the floor.  She stated
she went to the bathroom, and when she came out of the bathroom, Dempsey and a
man named Mike entered her apartment and walked into her bedroom.  She
testified she walked down to her car and heard screaming coming from her
apartment.  She waited a few minutes, went back to her apartment, and found
Dempsey and Mike beating the complainant with her son’s baseball bat.  Alvarez
testified she screamed at Dempsey and Mike to stop, but they continued kicking
and beating the complainant.  She also stated she heard someone use the phrase
“false claiming” and saw Dempsey lift his shirt.   

During the beating, the complainant also testified
that Dempsey lifted his shirt and “flashed” his tattoo.  Before the complainant
described the tattoo, Dempsey objected on the grounds that the tattoo and any
information about the tattoo was inadmissible evidence.  The trial court
overruled the objection.  The complainant then testified the tattoo was the
shield of the Aryan Brotherhood, a white supremacist gang.  He stated that when
Dempsey lifted his shirt, he said, “I’m the real Aryan Brotherhood.”  Additionally,
the complainant testified he knew Dempsey was a member of the Aryan Brotherhood.
 The complainant also admitted that when he was in prison, he was a member of
the Peckerwoods, “a group of solo white dudes” with the same ideology as the
Aryan Brotherhood.  

After the incident, Alvarez testified she, Dempsey,
and Mike went over to Brittany’s apartment and discussed their alibis.  She
stated Dempsey burned his clothes as well as the complainant’s wallet, cell phone,
and pill bottles in the fireplace.  She testified that Brittany gave Dempsey
lighter fluid so he could set the complainant’s PT Cruiser on fire.  Although
she did not actually see Dempsey set the car on fire, she stated she saw him
walk out the door with the lighter fluid.  HPD officer Troy Gallagher testified
the complainant’s incinerated PT Cruiser was found behind Dempsey’s apartment
complex.  

After
hearing all the evidence, the jury found Dempsey guilty of felony offense of
aggravated robbery and sentenced him to twenty-five years’ confinement.  This
appeal followed.       

II

In
his first three issues, Dempsey contends the trial court erred in allowing the
prosecution to present evidence of prejudicial and irrelevant extraneous
offenses to the jury.  These extraneous offenses include: testimony about a
fight that occurred between Dempsey and the complainant one week before the
robbery; evidence concerning Dempsey’s involvement in the Aryan Brotherhood;
and Dempsey’s statements about “hustling” at the club, obtaining Xanax from
Katherine Alvarez, and previously fighting with the complainant.  

We
review the trial court’s admittance of extraneous offenses using an
abuse-of-discretion standard. De La Paz v. State, 279 S.W.3d 336, 343
(Tex. Crim. App. 2009); Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim.
App. 2001).  While a trial court has substantial discretion, the court can
abuse its discretion if its rulings are outside the “zone of reasonable
disagreement.”  De La Paz, 279 S.W.3d at 343–44; Powell, 63
S.W.2d at 438.  If the evidence demonstrates that an extraneous offense is
relevant to a non-propensity matter, and its probative value is not
substantially outweighed by the danger of unfair prejudice to the jury, then
the ruling will be within the “zone of reasonable disagreement.”   See De
La Paz, 279 S.W.3d at 344.  

Texas
Rule of Evidence 404 explains that evidence of other crimes, wrongs, or acts is
inadmissible to prove a person acted in conformity with his character or a
particular character trait in committing a similar crime.  Tex. R. Evid.
404(a)–(b); Prince v. State, 192 S.W.3d 49, 54 (Tex. App.—Houston [14th
Dist.] 2006, pet. ref’d); see Johnston v. State, 145 S.W.3d 215, 219
(Tex. Crim. App. 2004).  Generally, courts do not allow evidence of extraneous
offenses because a jury may automatically infer that a person acted in
conformity with a bad character trait on the occasion in question.  See Johnston,
145 S.W.3d at 219.  But extraneous offenses may be admissible for other
purposes, such as to prove identity, motive, opportunity, preparation, intent,
plan, knowledge, or absence of mistake or accident.  Tex. R. Evid. 404(b);
Johnston, 145 S.W.3d at 219; Prince, 192 S.W.3d at 54.  “The
proponent of uncharged misconduct evidence [however,] need not ‘stuff’ a given
set of facts into one of the laundry-list exceptions set out in Rule 404(b),
but he must be able to explain . . . the logical and legal rationales that
support its admission on a basis other than ‘bad character’ or propensity
purpose.”  De La Paz, 279 S.W.3d at 343.  If a trial court determines
the offered evidence is relevant and does not constitute bad character
conformity, it may admit the evidence and instruct the jury that the evidence
is limited to a specific purpose.  Prince, 192 S.W.3d at 54.  It is
presumed a jury follows the trial court’s instructions and adheres to them, but
this presumption is rebuttable.  Colburn v. State, 966 S.W.2d 511, 520
(Tex. Crim. App. 1998).

A

            In
his first issue, Dempsey specifically argues the trial court erred in allowing
Alison Wright, the complainant’s sister, to testify about a prior fight between
the complainant and Dempsey.  Dempsey contends the evidence was offered solely
as propensity evidence to make him “look like a bad person in front of the
jury.”  The State contends Dempsey waived his complaint about the prior fight
because he failed to continuously object to the evidence, and he allowed the
same evidence to come in through another witness; therefore, any error is
harmless.  We agree with the State.

The
Texas Rules of Appellate Procedure require a party to preserve error for
appellate review by demonstrating the error on the record. Tex. R. App. P.
33.1(a); see also Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App.
1995).  If a party does not want an extraneous offense admitted at trial, when
the evidence is presented, he must object to preserve his complaint on appeal. 
McMillon v. State, 940 S.W.2d 767, 769 (Tex. App.—Houston [14th Dist.]
1997, pet. ref’d) (citing Ethington v. State, 819 S.W.2d 854, 858 (Tex.
Crim. App. 1991)).  The objection must be timely, proper, and specific.  Moff
v. State, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004) (explaining how the
objection must be specific unless the particular ground is apparent from the
context).  The party must object as soon as “the objectionable nature of the
evidence” becomes apparent, and then the party must seek to strike the evidence
from the record.  Ethington, 819 S.W.2d at 858.  A party must continue
to object every time the inadmissible evidence is offered.  Martinez v.
State, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (citing Ethington,
819 S.W.2d at 858).[1] 
If the objection is not continuously noted, the error in the admission of
evidence will be cured when the same evidence is admitted elsewhere without
objection.  Valle v. State, 109 S.W.3d 500, 509–10 (Tex. Crim. App.
2003); Ethington, 819 S.W.2d at 858 (citing Hudson v. State, 675
S.W.2d 507, 511 (Tex. Crim. App. 1984)).  The error, therefore, would be
rendered harmless.  Dickson v. State, 246 S.W.3d 733, 744 (Tex.
App.—Houston [14th Dist.] 2007, pet. ref’d).

Even
if the trial court erred in allowing Alison Wright to testify about the fight
between Dempsey and the complainant, the error was cured because the evidence
came in elsewhere without objection.  See Valle, 109 S.W.3d at 509.  The
State questioned the complainant about the prior incident without objection
from Dempsey.  Officer Gallagher and Alvarez also testified about the prior
fight between Dempsey and the complainant, and Dempsey cross-examined the
witnesses about the incident.  Additionally, before the complainant testified
about the prior fight, the court instructed the jury about the limited purpose
of the evidence.[2] 
It is presumed the jury followed the court’s instruction.  See Colburn,
966 S.W.2d at 520.  The evidence of the prior fight clearly was admitted
without objection through other State witnesses, and the court provided the
jury with a limiting instruction about the incident; therefore, and any error
that might have occurred was harmless.  Because any error is harmless, we
overrule Dempsey’s first issue. 

B

In
his second issue, Dempsey contends the trial court erred in admitting evidence
of his gang affiliation—the Aryan Brotherhood.  The State asserts it introduced
evidence of Dempsey’s gang affiliation to develop Dempsey’s motive for the
crime, not to highlight his bad character.  We agree with the State.

In
relation to Rule 404, courts have concluded that gang affiliation or membership
is considered evidence of other wrongs, crimes, or acts, which are subject to
exclusion.  Williams v. State, 974 S.W.2d 324, 331 (Tex. App.—San
Antonio 1998, pet. ref’d) (citing Pondexter v. State, 942 S.W.2d 577,
583–84 (Tex. Crim. App. 1996)).  Evidence of gang affiliation may be admitted
if it is admissible for a purpose other than bad character.  Vasquez v.
State, 67 S.W.3d 229, 239–40 (Tex. Crim. App. 2002); Medina v. State,
7 S.W.3d 633, 644 (Tex. Crim. App. 1999).  Under Rule 404(b), such evidence is
admissible if it is relevant to motive.  Vasquez, 67 S.W.3d at 239–40
(discussing appellant’s Mexican Mafia affiliation was relevant to motive
because it was the Mexican Mafia who put a “hit” on the complainant); Spencer
v. State, No.14-07-00683-CR, 2008 WL 2841686, *3–4 (Tex. App.—Houston [14th
Dist.] July 24, 2008, pet. struck) (explaining the appellant robbed the
complainant because he was not a member of the appellant’s gang); Trevino v.
State, 228 S.W.3d 729, 734–35 (Tex. App.—Corpus Christi 2006, pet. ref’d)
(concluding the appellant shot the complainant because he was a member of a
rival sect of the same gang).

Dempsey
argues there is “little to no evidence” indicating his “affiliation with the
Aryan Brotherhood had anything to do with the charged offense.”  He further
urges that the link between the charged crime and the gang affiliation must be direct
and indisputable, and he complains he and the complainant are not members of
rival gangs.  Case law, however, does not fully support either contention.  See
Medina, 7 S.W.3d at 644; Trevino, 228 S.W.3d at 734–35.  In Medina
v. State, two children were killed during a drive-by shooting.  7 S.W.3d at
636.  A witness testified that prior to the shooting at his house the “La Raza”
gang had vandalized his garage and smashed the window of a car that was parked
outside of his home.  Id. at 643.  The Court of Criminal Appeals held
the extraneous offenses committed by “La Raza” at the witness’s home were
relevant to show that the home was a gang target; therefore, the appellant, a
member of the gang, had a motive to commit the charged offense.  Id. 
The court stated, “That the house was a target of the gang has some tendency to
show that appellant had a motive to shoot and kill persons at that house.”  Id.
 

As
in Medina, the State presented a theory to the jury that the crime was
gang-related.  The complainant testified he knew Dempsey was a member of the
Aryan Brotherhood.  He also stated that when he was in prison, he belonged to
the Peckerwoods.  The complainant further testified that during the beating,
Dempsey lifted up his shirt, “flashed” the complainant his tattoo, and said he
was the “real Aryan Brotherhood.”  The State then introduced a photograph of
Dempsey’s tattoo, which depicted a large Aryan Brotherhood shield.  Alvarez
also testified she saw Dempsey lift his shirt and “flash” his tattoo.  Alvarez
stated that during the beating, she heard the phrase “false claiming.”  She
testified “false claiming is . . . when . . . you go around and you’re saying
you’re in [a gang] and you’re not.”  The State argued that Dempsey was
motivated to beat and rob the complainant because he was “false claiming.”  

Like
the Court of Criminal Appeals in Medina, we conclude that evidence of Dempsey’s
gang affiliation “has some tendency to show that appellant had a motive” to
commit the crime.  See id.  Although it may not be the primary or only
motive, case law does not mandate that the only motive of a crime be
gang-related to introduce evidence of gang affiliation.  See id.  On
these facts, we cannot conclude that the trial court abused its discretion by
allowing evidence of Dempsey’s gang affiliation to be introduced to support the
State’s motive.  We, therefore, overrule Dempsey’s second issue.    

C

            In
his third issue, Dempsey argues the court erred in allowing the jury to view his
videoed police interview because he made statements about inadmissible
extraneous offenses—obtaining Xanax from Alvarez and “hustling” at Sugar’s.[3]  Like the
evidence of gang affiliation, the State contends the evidence illustrates
Dempsey’s status as a rival drug-dealer in Sugar’s, thereby giving him a motive
to commit the offense.  We agree with the State.

As
with his first issue, the prosecutor introduced evidence of Alvarez selling
pills to Dempsey more than once during the trial.  Although Dempsey objected to
his statement in the recorded police interview about getting Xanax from Alvarez,
he did not object when the complainant stated he had Alvarez sell pills to
Dempsey or when Alvarez testified that she sold pills to Dempsey.  Additionally,
before the jury watched Dempsey’s videoed statement, the court instructed the
jury about the limited purpose of the evidence.[4] 
The evidence of Alvarez selling pills to Dempsey clearly was admitted without
objection with other State witnesses, and the court provided the jury with a
limiting instruction about the incident; therefore, any error that might have
occurred was harmless.  

            As
with the second issue, the State contends evidence of Dempsey “hustling” falls
under Rule 404(b) because it demonstrates Dempsey’s motive for committing the
crime.  The State theorized that Dempsey’s motive was his anger with the
complainant because the complainant started selling prescription pills at
Sugar’s.  The complainant testified he frequently sold prescription pills at
Sugar’s.  The State argued Dempsey was upset because he also sold prescription
pills to the clients and employees at Sugar’s; therefore, the complainant was
taking away his business.  In his videoed statement, Dempsey told the officers
he “hustles” at the club.  Dempsey objected to the introduction of the
videotape because the “hustling” statement had not been redacted.  The court
overruled his objection, and instructed the jury about the limited purpose of
the evidence—motive.  As previously stated, evidence of extraneous offenses is
admissible for non-conformity purposes, such as to prove motive.  Tex. R. Evid.
404(b); Johnston, 145 S.W.3d at 219.  On these facts, we cannot conclude
that the trial court abused its discretion by allowing Dempsey’s statements
about getting prescription pills from Alvarez or “hustling” at the club to be
admitted.  We, therefore, overrule Dempsey’s third issue.        

III

            In his fourth
issue, Dempsey argues the trial court erred in allowing Officer Gallagher to
testify about his veracity.  The State contends Dempsey did not properly
preserve error.  We agree with the State.   

            As previously
stated, the Rules of Appellate Procedure require a party to preserve error for
appellate review by demonstrating the error on the record. Tex. R. App. P.
33.1(a); see also Broxton, 909 S.W.2d at 918.  A party will preserve error
concerning the admission of evidence if the party objects to the evidence.  Cook
v. State, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993).  The party must make
the complaint in a timely manner and “state[] the grounds for the ruling that
the complaining party [seeks] from the trial court with sufficient specificity
to make the trial court aware of the complaint.” Tex. R. App. P.
33.1(a)(1)(A).  If the objection is sustained, the party must move for an
instruction for the jury to disregard, and if the instruction is given, then the
party must move for a mistrial.   Cook, 858 S.W.2d at 473.

Dempsey
argues the prosecutor basically asked Officer Gallagher to state whether
Dempsey was lying during the videoed statement.  When Officer Gallagher
testified, the prosecution asked him about Dempsey’s body language in the
video.  Dempsey first objected to the question stating, “The jurors are the
determiners of facts and they can watch the video all they want in the jury
room and look at his demeanor.”  The trial court overruled the objection.  The
prosecutor then asked Officer Gallagher if Dempsey continuously talked to him
during the interview.  Officer Gallagher testified “he probably talk[ed] when
he shouldn’t have, in my opinion, as far as being an honest person.”  The
prosecutor pursued the line of questioning and asked Officer Gallagher, “How do
you reconcile that with him folding his arms and you said he was kind of being
standoffish with you.  What do you mean by that?”  Dempsey objected to the
question because it called for Officer Gallagher to comment on his
truthfulness, and it invaded the province of the jury.  The court sustained the
objection.  Dempsey, however, did not request an instruction for the jury to
disregard, nor did he ask for a mistrial.  It is clear from the record that his
first objection about Officer Gallagher commenting on his demeanor was
different from his next objection about Officer Gallagher opining on his
veracity.  Therefore, the court’s ruling on his first objection does not
preserve error for his second objection, which is his issue on appeal, because
he did not “state[] the grounds for the ruling that [he sought] from the trial
court with sufficient specificity to make the trial court aware of the
complaint.”  See Tex. R. App. P. 33.1(a)(1)(A).  Because Dempsey did not
preserve the error at the trial level, we will not address the issue. 

IV

In his fifth issue, Dempsey contends the evidence at
trial is not factually sufficient to support his conviction.  The State argues
there is no indication that the jury’s decision is “clearly wrong” or
“manifestly unjust,” and the jury properly decided Dempsey was guilty beyond a
reasonable doubt.  We agree with the State.

In evaluating the factual sufficiency of the
evidence, we consider all the evidence in a neutral light.  Prible v. State,
175 S.W.3d 724, 730–31 (Tex. Crim. App. 2005); Newby v. State, 252
S.W.3d 431, 435 (Tex. App.—Houston [14th Dist.] 2008, pet. ref’d).  Our
analysis must consider the evidence appellant claims is most important in
allegedly undermining the jury’s verdict.  Sims v. State, 99 S.W.3d 600,
603 (Tex. Crim. App. 2003); Newby, 252 S.W.3d at 435.  In a
factual-sufficiency review, an appellate court asks whether the evidence
supporting the verdict is so weak or so against the great weight and
preponderance of the evidence as to render the verdict manifestly unjust.  Steadman
v. State, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009).  We do not substitute
our judgment for the fact finder’s judgment.  Drichas v. State, 175
S.W.3d 795, 799 (Tex. Crim. App. 2005); Newby, 252 S.W.3d at 435.  “‘[A]n appellate court must first be able to say, with some
objective basis in the record, that the great weight and preponderance of the .
. . evidence contradicts the jury’s verdict before it is justified in
exercising its appellate fact jurisdiction to order a new trial.’”  Grotti
v. State, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008) (quoting Watson v.
State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006)).  Although we are able
to second-guess the jury to a limited degree, “the factual-sufficiency review
should still be deferential, with a high level of skepticism about the jury’s
verdict required before a reversal can occur.”  Id.  

Concerning his factual-sufficiency argument, Dempsey
contends the evidence introduced at trial that was contrary to the verdict was
strong enough that the jury could not have rationally determined his guilt
beyond a reasonable doubt.  Dempsey emphasizes that Alison Wright and Alvarez
had “virtually no reason to tell the truth.”  Alison Wright testified she
visited her brother in the hospital and was angry about the crime.  She stated
she conducted her own investigation into the crime including going to Alvarez’s
apartment and having the apartment manager take pictures of the inside of the
apartment.  Dempsey argues the information Wright gave to Officer Kelly was
based on gossip, hearsay, and innuendo.  Dempsey also emphasizes that Officer
Kelly never collected evidence from the scene, and his suspicions were merely
based on Wright’s bias “investigation.”  Additionally, no physical evidence was
introduced at trial except for the picture of the complainant’s burned car
behind Dempsey’s apartment, which he argues is also within walking distance
from Sugar’s.  In his brief, Dempsey heavily focuses on the witnesses’ poor
character and inconsistencies in their stories.

A neutral review of the evidence indicates the jury
had enough evidence to rationally reach its verdict.  The complainant testified
that on the night he was beaten and robbed, he saw Dempsey with the bat in his
hands.  He stated he and Dempsey got into a fistfight about a week prior to the
robbery, and at Sugar’s the night of the robbery, Dempsey again confronted
him.  The State also introduced evidence of Dempsey’s gang affiliation and drug
distributing to support its motives of the crime. Furthermore, Alvarez
corroborated the complainant’s story, and she explained how Dempsey burned the
complainant’s effects and disposed of his vehicle.  The State also introduced photographs
of Alvarez’s bloody apartment, which further supported both Dempsey’s and
Alvarez’s description of the crime.  The jury weighed the evidence contrary to
the verdict that Dempsey cites as well as the evidence supporting the verdict. 
We conclude that the proof of guilt is not so obviously weak or against the
great weight and preponderance of the evidence as to render the verdict clearly
wrong or manifestly unjust.  We therefore hold the evidence is factually
sufficient to support the jury’s verdict, and overrule Dempsey’s fifth issue.

*
* *

For
the foregoing reasons, we affirm the trial court’s judgment.

 








                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

Panel consists of Justices Seymore,
Brown, and Sullivan.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
There are two exceptions to the continuous-objection requirement: (1) obtain a
running objection, or (2) request a hearing outside the jury’s presence.  Martinez,
98 S.W.3d at 193.  





[2]
The court stated:

Ladies and gentlemen, you
may hear evidence before you in this case regarding the defendant committing an
alleged offense or offenses other than the offense alleged against him in the
indictment in this case.  You cannot consider such evidence for any purpose
unless you find and believe beyond a reasonable doubt that the defendant committed
such other offense or offenses, if any, and even then you may only consider the
same in determining the motive, opportunity, intent, preparation, plan,
knowledge, identity or absence of mistake or accident of the defendant, if any,
in connection with the offense, if any, alleged against him in the indictment
and for no other purpose. 





[3]
Additionally in his brief, Dempsey contends that his statements about his gang
affiliation and fight with the complainant were also erroneously admitted.  We
have already concluded that evidence of his prior fight with the complainant amounted
to harmless error and evidence of his gang affiliation is admissible under Rule
404(b) to demonstrate motive.  Therefore, we will not address these issues
again.  





[4]
The court’s instruction is the same as the instruction in footnote 2.