

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JAIME ARELLANO, | § | No. 08-18-00198-CR |
| Appellant, | § | Appeal from the |
| v. | § | Criminal District Court No. 1 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20110D03106) |

## O P I N I O N

Jaime Arellano appeals from his conviction, following a jury trial, for unlawful possession with intent to deliver cocaine, more than 4 grams but less than 200 grams. We affirm.

### BACKGROUND

On June 22, 2011, the El Paso County Sheriff's Office obtained information from a detective that a certain truck may possibly be loaded with narcotics. A member of the Sheriff's narcotics task force located the truck and, after observing two traffic infractions, pulled the vehicle over. Arellano, who was the driver, sole occupant, and owner of the truck, was cooperative and volunteered that he might have some outstanding traffic warrants. The officer conducted a pat-down search, which revealed that Arellano was carrying $700 in cash in his pocket. Arellano signed a written consent to search the truck, after having the consent form explained to him in English and having been given the opportunity to read it in both English and Spanish.

Once a K-9 unit arrived on the scene, the dog and its handler began to search the exterior of Arellano's truck. The dog then jumped through the driver's open window and alerted to an odor of narcotics located high in the cab of the vehicle. The handler returned the dog to his patrol vehicle then continued to search the truck by hand. He discovered approximately 53 bindles[1] of a white powdery substance inside an overhead compartment of the truck's interior. Although the bindles were not apparent upon opening the compartment, they were discovered when the console was removed from its rail. Arellano was immediately placed under arrest.

At trial, Arellano attempted to introduce testimony from himself and his wife, Cynthia Buenrostro, explaining that they and their young daughter had been kidnapped by a drug cartel while they were in Juarez, Mexico, on the first Saturday in June 2011. When the State objected to preliminary questions about the incident, the trial court excused the jury and heard testimony outside their presence to determine its admissibility.

Buenrostro testified outside the jury's presence that she, Arellano, and their daughter were returning to the United States in Arellano's truck when, approximately a block and a half from the border bridge, a truck forced them to stop. Four men with guns emerged from the truck and accosted them.  Arellano was pulled from his truck and taken away, while Buenrostro huddled on the floor behind the driver's seat, holding the child. A man with a gun got into Arellano's truck, told Buenrostro that he was with the Juarez drug cartel, repeatedly threatened her and her daughter, and drove for 20 or 25 minutes before stopping. At that point, the man received a radio call and began rummaging through the truck's glove compartment, the middle console and the console on top. He then got out of the truck but returned in a few minutes and again looked through the truck's

---

[1]  A bindle is a small package, usually containing approximately one gram of narcotics, for street-level delivery.

glove compartment. He then received another radio call, laughed, and drove the truck back into Juarez. He warned Buenrostro against telling anyone what had happened to her then left.

Buenrostro stayed on the floor of the truck until she soon heard her husband's voice calling her. She saw when he got into the truck that he had been beaten. He said that it had all been a mistake and that they were not who the men were looking for. They drove back to the United States, went home, and did not report the incident to anyone because they were afraid of the cartel.

Buenrostro testified that even though she did not see her kidnapper put any drugs in their truck, she had assumed that that was how they got there because she had seen him moving the compartments. She admitted on cross-examination by the State that she could not say that Arellano had not himself put the drugs in the truck, nor could she say that they were in fact put there during the Juarez incident.

Arellano similarly testified outside the presence of the jury that he and his family were accosted by four men who forced him to stop his truck as they approached the border. He was driven away and beaten, then taken to a white room, where he was beaten some more. He was told that he had to sell drugs for the cartel, or they would kill his family. To protect his family, he agreed but never actually intended to sell drugs for the cartel.

Arellano was then dropped off in downtown Juarez, where he spotted his own truck and called out to his wife. He told her it was all a mistake and they returned to the United States, where they did not report the incident because they were afraid. After their return, Arellano examined every compartment in his truck except the upper compartment where the drugs were located. He explained that did not look there because he never used that compartment.

Arellano testified that the Juarez incident was the only time that his truck had been out of

3

his custody and control. He did not, however, see anyone put drugs in his truck and his kidnappers never mentioned putting any drugs in his truck. In addition, no one from the cartel ever contacted him after he returned to the United States.

The State objected to the testimony concerning the Juarez incident on the ground that it was an improper attempt to raise a duress defense without meeting the requirements of that defense. When counsel for Arellano insisted that he was not raising a duress defense, the State further objected that the testimony was irrelevant, speculative, an improper attempt to engender sympathy for the defendant, and that its probative value, if any, was outweighed by its prejudicial effect and the danger of confusing and misleading the jury.

Counsel for Arellano responded that he was offering the testimony only to show why Arellano's truck was out of his custody and control. He denied seeking to use the testimony to show that the kidnappers put the drugs in the truck: "We are simply telling the jury what happened and nobody is implying or saying these people put this in the—in the compartment." Limiting the scope of the testimony, the trial court ruled that counsel could ask Arellano if his truck was ever out of his custody and control, but that the court did not see any relevance in the details of the Juarez incident.

Arellano then testified before the jury that his truck was out of his custody and control for hours on the first Saturday in June. He began to explain, "when the cartel . . . ," but was interrupted by the State's objection, which the court sustained. He did, however, testify that "[t]he only moment when the truck was out of my reach was when that happened to me in Juarez." He denied putting the drugs in his truck, denied ever having sold drugs, denied intending to sell drugs for the

4

cartel, and guaranteed that his fingerprints were not on the packages found in the truck.[2]

The jury found Arellano guilty of the offense of unlawful possession of cocaine with intent to deliver. The court assessed punishment at seven years' confinement, suspended for seven years. This appeal followed.

## DISCUSSION

Arellano asserts in his sole issue that the trial court violated the due process clause of the Fourteenth Amendment to the United States Constitution by excluding evidence of the Juarez incident and thus preventing him from making his defense.

### A. Standard of Review

A trial court's exclusion of evidence is reviewed for abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001) (en banc). This standard applies equally when a court excludes evidence that a defendant asserts is necessary to establish his defense. *See Miller*, 36 S.W.3d at 507. "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *De La Paz*, 279 S.W.3d at 343–44.

### B. Exclusion of evidence of the Juarez incident

A criminal defendant has a fundamental right under the United States Constitution "to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule." *Miller*, 36 S.W.3d at 507. Relevant evidence is evidence that has any tendency to make a fact of consequence to deciding the matter more or less probable than it would

---

[2] Multiple witnesses had testified that law enforcement did not attempt to lift any fingerprints from the packages. One witness explained that the packages were too small to be effectively fingerprinted, and another testified that it was not normal procedure to fingerprint street-level packages

be without the evidence. TEX. R. EVID. 401. A court may exclude relevant evidence if its probative value is substantially outweighed by a danger of such concerns as unfair prejudice, confusing the issues, or misleading the jury. TEX. R. EVID. 403.

An evidentiary ruling might rise to the level of a constitutional violation if a trial court makes a clearly erroneous ruling that excludes otherwise relevant, reliable evidence that "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002) (quoting *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002)). Such is the case when an erroneous ruling excludes evidence that goes to the heart of the defense. *Id.*

Arellano asserts on appeal that, by excluding evidence of the Juarez incident, the trial court prevented him from presenting the defensive theory that "members of the Juarez cartel had placed the drugs in Appellant's truck without Appellant's knowledge." But, at trial, counsel for Arellano specifically informed the trial court that he was *not* attempting to prove that the kidnappers placed the drugs in the truck: "We are simply telling the jury what happened and nobody is implying or saying these people put this in the—in the compartment." Counsel further explained that this was the only time the truck was out of Arellano's control and that he simply wanted to provide the jury with context:

> It's the only explanation that he gives as to why this truck was out of his care, custody and control. And he doesn't make any sense to just say, "Well, you know, there were a couple of hours in the first of—the first Saturday of June when this truck was out of my care, custody or control" unless you give the jury the whole picture, you know.

An appellate court must review a trial court's ruling in light of the arguments that were before the trial court at the time it ruled. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App.

6

2004); *see also Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); Tᴇx. R. Aᴘᴘ. P. 33.1. "The appellate court may not fault the trial court on the basis of arguments not presented to the trial court." *Wead*, 129 S.W.3d at 129.

Arellano's argument on appeal not only does not comport with his argument to the trial court, it is directly contrary to that argument. Having specifically advised the trial court that he was *not* seeking to introduce evidence of the Juarez incident to prove that the cartel placed the drugs in his truck, he cannot now ask this Court to hold that the trial court abused its discretion by failing to admit the evidence for that very purpose. In any event, we otherwise conclude that the proffered evidence is inadmissible even for the purpose Arellano now advances.

A defendant may attempt to establish his innocence by showing that someone else committed the crime with which he is charged. *Wiley*, 74 S.W.3d at 406. Even so, he must show that the proffered evidence is sufficient "to show a nexus between the crime charged and the alleged 'alternative perpetrator.'" *Id.* The record in this case lacks any such nexus.

Buenrostro testified, outside the presence of the jury, that she was in Arellano's truck the entire time it was in the hands of the Juarez cartel, and that she saw one of the men rummage through the truck's compartments. She did not, however, see anyone place drugs into any of those compartments. She admitted that she could not say that the drugs were placed in the truck during the Juarez incident, or that Arellano did not place the drugs there, himself. Arellano also testified that he did not see anyone put drugs in his truck, and that the kidnappers never mentioned putting drugs in his truck.

The proffered evidence is highly speculative on the issue of whether the cartel placed drugs in Arellano's truck. Evidence of a highly speculative nature has little probative value. *See id.* at

407. It can, however, create a "great threat" of confusion of the issues by forcing the State to disprove a nebulous allegation that perhaps someone else committed the crime. *Id.* This gives rise to a "side trial" that may divert the jury's focus from the case at hand. *Id.*

> It is not sufficient for a defendant merely to offer up unsupported speculation that another person may have done the crime. Such speculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice.

*Id.* (quoting *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998)); *see Dickson v. State*, 246 S.W.3d 733, 739 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) ("evidence of third party guilt is inadmissible if it is mere speculation that another person may have committed the offense").

The details of the Juarez incident are "precisely the type of emotionally-freighted but speculative evidence that trial judges properly exclude under Rule 403, whether offered by the State or the defendant." *Wiley*, 74 S.W.3d at 408. We note that the trial court tailored its ruling to exclude the "emotionally-freighted" details of the kidnapping and the speculative evidence that the cartel placed the drugs in the truck. Yet, Arellano was permitted to testify that he did not put the drugs in his truck, the truck was out of his custody and control for several hours in early June and, when it was returned to him, he checked every compartment except the one where the drugs were found. He was, therefore, permitted to present evidence of the substance of his defense—that he did not place the drugs in the truck and was unaware that they were there. *See Potier*, 68 S.W.3d at 666 (excluding evidence is not prejudicial where defendant is not prevented from presenting the substance of his defense).

While the trial court excluded some of Arellano's defensive evidence, Arellano "has failed to show how the trial judge's ruling was erroneous, much less so clearly erroneous that it violated his constitutional rights." *Wiley*, 74 S.W.3d at 408. Like the excluded evidence in *Wiley*, the details

8

of the Juarez incident are, at best, marginally relevant. And, insofar as Arellano relies on that evidence to show that the Juarez cartel placed the drugs in his truck, it is highly speculative. *See id.*

We conclude that Arellano was not deprived of his constitutional right to present a defense because the trial court did not abuse its discretion by excluding testimony concerning the Juarez incident. *See id*. Arellano's sole issue is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

GINA M. PALAFOX, Justice

August 27, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

9