Tremaine Deshaie DICKSON,
Appellant,

v.

The STATE of Texas, Appellee.

No. 14–06–00612–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 20, 2007.

Discretionary Review Refused
March 5, 2008.

Nicole Wignall Deborde, Houston, for appellant.

Jessica Alane Caird, Houston, for appellee.

Panel consists of Justices YATES, SEYMORE, and EDELMAN *.

## OPINION

CHARLES W. SEYMORE, Justice.

A jury convicted appellant, Tremaine Deshaie Dickson, of aggravated robbery and assessed punishment of thirty-five years' confinement. In two issues, appellant contends the trial court erred in preventing him from presenting alternative perpetrator evidence and in admitting evidence of extraneous offenses. We affirm.

### I. BACKGROUND

On the evening of December 10, 2005, three separate incidents of robbery occurred at the Camden Station apartment complex in Houston, Texas. In the offense-at-issue, at approximately 9:45 p.m., a young man approached John Dufour as Dufour walked his two dogs and accompanied his wife, Janna Dufour, to her car. The man was running and repeating the phrase "come get me." As he ran past the Dufours, the dogs began to bark at him. He turned around and pointed a handgun at the dogs, threatening to shoot them if the Dufours did not make the dogs stop barking. He then threatened to shoot

* Senior Justice Richard H. Edelman sitting by assignment.

John and Janna if they did not give him their money. However, when a neighbor turned on his porch light and opened the front door, the assailant ran away without taking anything from the Dufours.

Robert Kelly and Carlos Cruz were also robbed that night at the Camden Station apartments.[1] Kelly was accosted as he returned home from a Christmas shopping trip. As he stepped out of his van, a man walked up to him, put a gun to his throat, and asked how much money he had. Before Kelly could retrieve his wallet, the man struck him twice in the head with the gun. After obtaining Kelly's wallet, the man demanded Kelly's cellular phone, and struck Kelly three times with the gun before Kelly relinquished the phone. The assailant proceeded to kick Kelly in the ribs before leaving. Similarly, Cruz was robbed as he walked towards his apartment. As Cruz approached his apartment door, a man addressed him, asking if he needed a woman. When Cruz declined his offer, the man walked past him and turned around, producing a handgun. He demanded Cruz's money. Before Cruz could turn over his wallet, the man struck him multiple times with the handgun. The assailant ran away after taking Cruz's wallet and cellular phone.

Each of the victims spoke with police the night of the robberies. Although their recollections of the assailant's description differed, all four concurred that the man was dark-skinned, about six feet tall, wore a coat or jacket with either a skull cap or the jacket hood up, styled his hair in braids or dreadlocks, and carried a handgun. However, the police identified no suspects at that time.

A few weeks later, as Kelly drove near the Camden Station complex, he recog-nized a young African–American man sitting outside a nearby apartment complex as his assailant. He informed the police, who subsequently arrested appellant. The police created a photo line-up consisting of photographs of appellant and five other men. Each of the four robbery victims viewed the photo-lineup. John Dufour and Robert Kelly each identified appellant as their robber. Janna Dufour provided a tentative identification of appellant. She stated appellant looked more like her robber than any of the others in the lineup, but, from the photograph, she was not certain whether appellant was the person who robbed her. Carlos Cruz also provided a tentative identification of appellant. He believed appellant looked more like the robber than any of the others depicted in the photo lineup. However, Cruz, who does not speak English well, testified that he was confused by the police officer's instructions, which had been translated into Spanish by a patron of the bakery where Cruz worked, and believed that he was only choosing the photograph that looked most similar to his assailant, not the actual robber. At trial, John Dufour, Janna Dufour, and Robert Kelly each positively identified appellant as their robber. Carlos Cruz testified that appellant was not the person who robbed him.

Appellant attempted to introduce evidence that an alternative perpetrator committed the offense. Gwendolyn Gamble, appellant's grandmother, testified that her son, Leonard Gamble, bore a family resemblance to appellant, lived with her and appellant near the location of the robbery, and had been convicted of multiple robberies close in time to the robbery. However, the trial court excluded from evidence

---

**1.** The State presented evidence of Kelly's robbery in its case-in-chief. Appellant called Cruz to testify regarding the issue of identity.

photographs depicting the similarity of appellant and Leonard Gamble's physical appearance as well as indictments and judgments showing Gamble's convictions for robberies dating December 9, 2005 and January 1, 2006, one day before and twenty-two days after the robbery-at-issue. The trial court ruled such evidence was irrelevant and its probative value was substantially outweighed by the probability of confusing the jury.[2] The jury ultimately returned a verdict convicting appellant for aggravated robbery.

## II. ANALYSIS

In two issues, appellant contends the trial court erred in two of its evidentiary rulings: (1) by excluding his proffered alternative perpetrator evidence and (2) by admitting evidence of appellant's extraneous offenses. For all the reasons set forth below, we cannot conclude that the trial court abused its discretion.

### A. STANDARD OF REVIEW

■■■ We review the trial court's rulings under the Texas Rules of Evidence for abuse of discretion. *Martin v. State,* 173 S.W.3d 463, 467 (Tex.Crim.App.2005). A trial court abuses its discretion if its decision is outside the zone of reasonable disagreement or if it acts without reference to guiding rules or principles. *Montgomery v. State,* 810 S.W.2d 372, 380, 391 (Tex.Crim.App.1990). If the ruling was correct under any theory of law applicable to the case, we must uphold the judgment. *Martin,* 173 S.W.3d at 467.

### B. ALTERNATIVE PERPETRATOR EVIDENCE UNDER *RAMIREZ* AND *ERWIN*

Appellant argues that evidence of absent third party guilt should be evaluated under the common law rules handed down by the Court of Criminal Appeals in *Ramirez v. State* and *Erwin v. State.* In *Ramirez,* the Court of Criminal Appeals held:

> declarations of a third party admitting his guilt of the crime for which the accused is on trial are admissible only when the State is relying upon circumstantial evidence, when the guilt of such party is inconsistent with the guilt of the accused, and when the facts show that such party was so situated that he might have committed the crime.

■■ *Ramirez v. State,* 543 S.W.2d 631, 632 (Tex.Crim.App.1976), *overruled by Burks v. State,* 876 S.W.2d 877, 904 (Tex. Crim.App.1994). The Court of Criminal Appeals seemed to expand this rule in *Erwin v. State* stating:

> the defendant must meet three criteria before evidence of a third party's guilt is admissible. These criteria are (1) that the State is relying only on circumstantial evidence, (2) that the guilt of the third party is inconsistent with the guilt of the accused, and (3) that the facts show the third party was so situated that he might have committed the crime.

*Erwin v. State,* 729 S.W.2d 709, 716 (Tex. Crim.App.1987), *overruled by Burks,* 876 S.W.2d at 904. However, *Ramirez* and its progeny, including *Erwin,* were overruled by the enactment of the Texas Rules of Criminal Evidence on September 1, 1986. *See Burks,* 876 S.W.2d at 904 (stating the enactment of the Texas Rules of Criminal Evidence [now the Texas Rules of Evidence] supersedes the common law rule set forth in *Ramirez* and *Erwin* ). Accordingly, trial courts now refer to the Texas Rules of Evidence rather than the

---

**2.** The photographs, indictments, and judgments were admitted under a bill of exception for the appellate record.

common law in evaluating the admissibility of evidence.[3] *See id.*

## C. ALTERNATIVE PERPETRATOR EVIDENCE UNDER THE RULES OF EVIDENCE

 Under the Texas Rules of Evidence, the trial court follows a two-step process in determining whether evidence is admissible. *See Montgomery*, 810 S.W.2d at 375–76. First, the trial court must decide whether the evidence is relevant. *Id.* at 375. Relevant evidence is defined as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R. Evid. 401. Second, the trial court must determine if the evidence should be excluded because of some other provision, whether constitutional, statutory, or evidentiary. *See Montgomery*, 810 S.W.2d at 376 (citing Tex.R. Evid. 402). Under rule 403 of the Texas Rules of Evidence, relevant evidence may be excluded if its probative value is substantially outweighed by a number of counter-factors, including the danger of confusion of the issues. Tex.R. Evid. 403. For relevant evidence to be excluded under rule 403, the opponent of the evidence must show that its negative attributes substantially outweigh any probative value. *Montgomery*, 810 S.W.2d at 377. Rule 403 favors admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Gallo v. State*, 239 S.W.3d 757 (Tex.Crim.App.2007). However-

er, in weighing probative value against rule 403 counter-factors, the trial court must be sensitive to special problems presented by alternative perpetrator evidence. *See Wiley v. State*, 74 S.W.3d 399, 406 (Tex.Crim.App.2002). Relevant evidence of an alternative perpetrator may be excluded absent proof of a sufficient nexus between the crime charged and the alleged alternative perpetrator. *Id.* Although it is unclear exactly how much evidence is necessary to sufficiently prove a nexus between the offense and allegedly guilty third party, Texas jurisprudence is clear that evidence of third party guilt is inadmissible if it is mere speculation that another person may have committed the offense. *Id.* at 406–08.

In this case, the trial court excluded appellant's alternative perpetrator evidence ruling that it was irrelevant and would be confusing to the jury. We first address the issue of relevancy.

 Despite the trial court's ruling, we conclude appellant's proffered alternative perpetrator evidence was relevant. Identity was a material issue in this case and vigorously contested at trial. Three of the State's witnesses identified appellant as their robber at trial. Additionally, the State presented evidence that John Dufour and Robert Kelly each positively identified appellant in a photo-lineup, as well as evidence that Janna Dufour and Carlos Cruz each made tentative identifications of appellant from a photo-lineup. Appellant testified at trial and denied that he committed

---

3. Appellant, in support of his contention that his proffered evidence should be analyzed under the common law rule, cites *Wieghat v. State*, 76 S.W.3d 49, 52 (Tex.App.—San Antonio 2002, no pet.); and *Gillespie v. State*, No. 01–94–01189–CR, 1997 WL 297549 at *8 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd). These cases, decided after the enactment of the Texas Rules of Criminal Evidence and *Burks*, applied the *Erwin* rule to analyze

the admissibility of evidence of absent third party guilt. *See Wieghat*, 76 S.W.3d at 52; *Gillespie*, 1997 WL 297549 at *7–8. To the extent that other intermediate courts of appeals have applied *Erwin* regarding evidence of third party guilt after the enactment of the Texas Rules of Criminal Evidence and the Texas Rules of Evidence, we note our respectful disagreement. *See Burks*, 876 S.W.2d at 904.

any of the robberies on December 10, 2005. Additionally, Carlos Cruz testified appellant was not the person who robbed him, and Gwendolyn Gamble, appellant's grandmother, testified that her son, Leonard Gamble, had been convicted of multiple robberies, bore a family resemblance to appellant, and lived with her and appellant on the date of the offense-at-issue. Appellant attempted to introduce photographs highlighting the similarity in physical appearance between himself and Leonard Gamble, as well as indictments and convictions of Gamble for robberies committed one day before and twenty-two days after the offense-at-issue in an attempt to show it was likely Gamble committed the offense-at-issue. Had the jury believed appellant's proffered alternative perpetrator evidence then it would have made the proposition that appellant robbed John Dufour less likely to be true. Therefore, we conclude that any evidence an alternative perpetrator committed the offense-at-issue was relevant under rule 401.

■ Under the Texas Rules of Evidence, due to the presumption of admissibility of relevant evidence, the trial court could only exclude appellant's proffered alternative perpetrator evidence under rule 403 only if the evidence's probative value was substantially outweighed by a rule 403 counter-factor. Even though we disagree with the trial court's specific rationale in excluding the evidence, we must affirm the trial court's ruling if it is correct under any theory of law. *Martin*, 173 S.W.3d at 467.

■ The court ruled appellant's proffered alternative perpetrator evidence was inadmissible because it would lead to confusion of the issues. Confusion of the issues occurs when introduction of the contested evidence raises the probability that the proof and the answering evidence that

it provokes may create a side issue that will unduly distract the jury from the main issues. *Henderson v. State*, 29 S.W.3d 616, 627 (Tex.App.—Houston [1st Dist.] 2000, pet. ref'd). Here, appellant's proffered evidence addressed the issue of identity. As stated above, identity was the paramount issue in this case. There was no danger that the evidence would create a side issue because the evidence addressed a material issue in the case.

■ However, in order to introduce alternative perpetrator evidence, appellant had to prove a nexus existed between the alleged alternative perpetrator and the offense-at-issue. *See Wiley*, 74 S.W.3d at 406. Appellant attempted to show a nexus between Gamble and the offense-at-issue in his bill of exception by demonstrating a chronology of Gamble's offenses, similar modus operandi between Gamble's offenses and the offense-at-issue, Gamble's access to the location of the offense-at-issue, and the similarity of physical appearance between himself and Gamble. Appellant sought to introduce Gamble's indictments and convictions for two robberies dating December 9, 2005 and January 1, 2006, one day before and twenty-two days after the offense-at-issue. Through Gamble's indictment for aggravated robbery with a deadly weapon on December 9th, appellant attempted to show Gamble's modus operandi was similar to the offense-at-issue. Appellant also introduced evidence that, at the time of the offense-at-issue, Gamble lived with appellant near the location of the offense-at-issue, demonstrating Gamble had access to the location of the robbery. Relying on the doctrine of chances, the common law rule under which an unusual and abnormal element might perhaps be present in only one instance, but that the more often similar unusual instances occur with similar results, the less likely the abnormal element is likely

to be the true explanation for them; *see Robbins v. State*, 88 S.W.3d 256, 268 (Tex. Crim.App.2002) (Cochran, J., concurring); appellant argued that Gamble's convictions for robberies one day before and twenty-two days after the offense-at-issue led to the likely conclusion that Gamble was the true perpetrator.

■ Although it is unclear exactly what constitutes sufficient evidence to satisfy the nexus requirement under *Wiley*, we cannot conclude this evidence is sufficient. In order for a court to conclude there is a nexus between an alleged alternative perpetrator and the offense-at-issue, there must be something more than evidence that a person other than the criminal defendant was committing similar crimes around the time of the offense-at-issue, the evidence must connect the alleged alternative perpetrator to the specific offense. For example, appellant did not present evidence that Gamble's offenses were committed at or near the location of the offense-at-issue or present testimony from any of the witnesses identifying Gamble as the robber. *Compare Wiley*, 74 S.W.3d at 406 (holding alternative perpetrator evidence is mere speculation and inadmissible where evidence showed a patron of defendant's restaurant was "thrown out" of the restaurant for taking off his shirt, striking matches, and acting crazy several days before the restaurant was destroyed by fire) *with U.S. v. Stevens*, 935 F.2d 1380, 1405 (3d Cir.1991) (holding testimony of a victim of a second robbery that defendant was not the perpetrator his robbery was admissible under the reverse 404(b) doctrine, where both crimes: (1) took place within a few hundred yards of one another; (2) were armed robberies; (3) involved a handgun; (4) occurred be-tween 9:30 p.m. and 10:30 p.m.; (5) were perpetrated on military personnel; (6) involved a black assailant who was described similarly by his victims; (7) the assailant stole wallets and rummaged though the victim's pockets; and (8) the fruits of both robberies, which occurred at Fort Dix, New Jersey, both surfaced near Fort Meade, Maryland).[4] We agree that Gamble's indictments and convictions indicate he engaged in a spree of robberies overlapping the offense-at-issue. However, this evidence supports no conclusions other than that Gamble was committing robberies around the time of the offense-at-issue. It does not tend to connect Gamble to the specific robbery of John Dufour on December 10, 2005, and therefore it does not demonstrate the required nexus. Appellant's first issue is overruled.

### D. Admission Of Extraneous Offenses

In his second issue, appellant contends the trial court erred in allowing the State to present evidence of an extraneous offense committed the day of the offense-at-issue. Specifically, appellant contends that the extraneous offense was inadmissible as contextual evidence or to prove identity because (1) the modes of commission of the offenses-at-issue and the extraneous offense differed; (2) the extraneous offense was inadmissible to show pattern;(3) extraneous offense evidence is not admissible to prove identification; and (4) the trial court prematurely allowed the extraneous offense evidence. However, we cannot conclude the trial court abused its discretion.

■ Under the Texas Rules of Evidence, extraneous offense evidence is not admissible to prove the character of a person in order to show action in conformity

---

4. We could not identify any Texas case in which an appellate court concluded a defendant presented evidence sufficient to fulfill the nexus requirement since it was adopted by the Texas Court of Criminal Appeals. *Wiley v. State*, 74 S.W.3d at 406.

therewith. *See* Tex.R. Evid. 404(a). However, the jury is entitled to know all the relevant facts and circumstances surrounding a charged offense. *Moreno v. State,* 721 S.W.2d 295, 301 (Tex.Crim.App.1986). Contextual evidence is admissible when several offenses are so intermixed or connected as to form a single, indivisible criminal transaction, such that in narrating the one, it is impracticable to avoid describing the other. *Rogers v. State,* 853 S.W.2d 29, 33–34 (Tex.Crim.App.1993). Contextual evidence is admissible only when the offense would make little or no sense without the extraneous offense evidence. *Id.*

Additionally, while evidence of extraneous offenses is inadmissible to show action in conformity with bad character, rule 404(b) provides that extraneous offense evidence may be admissible for some other purpose, such as proof of identity. *See* Tex.R. Evid. 404(b); *Harvey v. State,* 3 S.W.3d 170, 175 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd). However, raising the issue of identity does not automatically render extraneous offenses admissible. *See Lane v. State,* 933 S.W.2d 504, 519 (Tex.Crim.App.1996). To be admissible to show identity, an extraneous offense must be so similar to the offense-at-issue that the offenses are marked as the accused's handiwork. *Id.* Sufficient similarity may be shown by proximity in time and place or by a common mode of committing the offenses. *Ransom v. State,* 503 S.W.2d 810, 813 (Tex.Crim.App. 1974). In *Harvey,* we held that where an accused used the same mode of commission in the offense-at-issue and the extraneous offense, committed both offenses in the same residential area, and committed both offenses within an hour there was sufficient similarity between the offense-at-issue and the extraneous offense for the trial court to admit the extraneous offense

evidence to prove identity. *Harvey,* 3 S.W.3d at 175.

In this case, the trial court allowed the State to present extraneous offense evidence of the robbery of Robert Kelly for the purpose of "identification." Although the extraneous offenses were not so intermixed as to form a single, indivisible criminal transaction, and therefore the evidence was not admissible as contextual evidence; appellant raised the issue of identity in his cross-examination of the State's witnesses and in his case-in-chief. Indeed, as we have indicated above, identity was the primary issue in this case, and extraneous offense evidence was admissible regarding this issue. The extraneous offense presented by the State was committed at approximately the same time and place, and by a common mode of commission—both robberies were committed the night of December 10, 2005, at the Camden Station apartment complex, by a person armed with a handgun who approached his victims as they walked to or from their apartments and threatened or caused injury with that weapon. Appellant argues that the State failed to prove the robberies in question were so similar as to be marked as his handiwork because in the robbery of John Dufour, the robber was unsuccessful and ran away after only threatening Dufour with the gun, while in the robbery of Robert Kelly, the robber hit Kelly with the gun when he did not comply with the robber's demands quickly enough. However, the Court of Criminal Appeals has held that extraneous offenses may be sufficiently similar to prove identity when there is either proximity in time and place *or* a common mode of committing the offense. *See Ransom,* 503 S.W.2d at 813. Here, the offenses in question satisfied either of these requirements. The offenses were proximate in both time and place—the offenses were both committed

the night of December 10, 2005 at the Camden Station apartments. Additionally, the offenses were committed by a common mode of commission—the robber approached his victims as they walked to or from their apartments and threatened them with a gun. Although the robber proceeded to strike Kelly before obtaining his property while the robber ran away from Dufour before striking him or obtaining his property, these differences are immaterial. Some dissimilarities between the charged crime and the extraneous offense do not automatically make the extraneous offense inadmissible. *Ransom,* 503 S.W.2d at 813–14. We conclude the offenses were sufficiently similar that evidence of the extraneous offense was admissible to prove the issue of identity.

Appellant also contends that extraneous offense evidence is not admissible to bolster a witness's identification of the accused. He argues the State selectively tried Dufour's robbery in order to introduce evidence of Kelly's identification of appellant and present the jury with as many complainant identifications of appellant as possible. Appellant notes that rule 404(b), while not an exhaustive list the reasons extraneous offense evidence may be admitted at trial, does not list "identification" as a proper purpose for the admission of extraneous offense evidence. *See* Tex.R. Evid 404(b). However, there will always be some element of identification when evidence is offered for the purpose of proving the accused's identity. *See e.g. Siqueiros v. State,* 685 S.W.2d 68, 71 (Tex. Crim.App.1985) (en banc) (evidence of a similar extraneous offense admissible because, inter alia, the defense strategy was aimed at undermining a witness's identification of defendant). While appellant may be correct that if extraneous offense evidence were offered for the sole purpose of bolstering identification when identity was not at issue then such evidence would be

inadmissible, in this case, where identity was hotly contested, we cannot conclude the trial court abused its discretion in admitting the State's extraneous offense evidence.

■ Additionally, appellant contends that the extraneous offense could not be admitted under rule 404(b) because the State argued at trial that the extraneous offense was admissible to show pattern. Appellant argues that evidence of pattern is inadmissible because pattern could only be used to show an accused acted in conformity with bad character, a purpose inadmissible under rule 404. *See* Tex.R. Evid. 404(a). Although evidence that an accused has a pattern of committing offenses could implicate the prohibition on using extraneous offenses to prove conformity with bad character, where identity is an issue in the case, the Texas Rules of Evidence make an exception for the introduction of extraneous offenses bearing the same modus operandi. *See* Tex.R. Evid. 404(b). Where a pattern of offenses are so similar that the offenses are marked as the handiwork of the accused and identity is at issue, then extraneous offense evidence may be admitted to prove identity. *See Lane,* 933 S.W.2d at 519. As stated above, identity was the paramount issue, and the extraneous offenses were committed close in time and place and by the same mode of commission. Therefore, we cannot conclude the trial court abused its discretion, despite the State's argument that such offenses show a pattern.

■ Finally, Appellant seems to contend that the trial court prematurely permitted the State to offer evidence of the extraneous robbery in its case-in-chief. However, appellant raised the issue of identity in his cross-examination of the State's very first witness, attempting to impeach the witness's identification of ap-

pellant. Impeachment of a witness's identification testimony raises the issue of identity for which extraneous offense evidence is admissible. *See Burton v. State,* 230 S.W.3d 846, 849–50 (Tex.App.—Houston [14th Dist.] 2007, no pet.) Regardless, even if the trial court prematurely admitted the extraneous offense evidence, subsequently admitted evidence can render the error harmless. *See Jones v. State,* 587 S.W.2d 115, 120 (Tex.Crim.App.1979). In appellant's case-in-chief, he presented an alibi defense, thus firmly raising the issue of identity by positing that he could not be the person who robbed John Dufour because he was at a different location at the time of the robbery. Therefore, by affirmatively raising the issue of identity, appellant rendered harmless any possible error in the trial court's admission of the extraneous offense. Appellant's second issue is overruled.

Accordingly, the judgment of the trial court affirmed.