**F I L E D**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI

2/2/2015

**DORIAN E. RAMIREZ, CLERK**

**BY** JParedes

ACCEPTED
13-14-00249-CR
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
2/2/2015 3:44:01 AM
DORIAN RAMIREZ
CLERK

## NO. 13-14-00249-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
AT CORPUS CHRISTI

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
2/2/2015 3:44:01 AM
DORIAN E. RAMIREZ
Clerk

**JUAN VELA,
APPELLANT,**

**VS.**

**THE STATE OF TEXAS,
APPELLEE.**

ON APPEAL FROM THE 128TH DISTRICT COURT
NUECES COUNTY, TEXAS
TRIAL COURT NUMBER 13-CR-3438-A

## BRIEF FOR THE STATE

Adolfo Aguilo, Jr.
State Bar No. 00936750
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
adolfo.aguilo@co.nueces.tx.us
Attorney for Appellee

**ORAL ARGUMENT IS NOT REQUESTED**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES .......................................................................... iii

STATEMENT OF FACTS ................................................................................1

SUMMARY OF THE ARGUMENT .........................................................9

    1. <u>Reply to Appellant's Issue:</u>

    A. The trial court did not err in denying Appellant's motion because Appellant was not entitled to a severance of just one of the charged offenses.

    B. Appellant's argument incorrectly treats the offenses alleged in the first two counts of the indictment as one offense.

    C. A review of the entire record reveals that Appellant's substantial rights were not affected by the trial court's denial of his motion.

ARGUMENT .................................................................................... 10

1. <u>Reply to Appellant's Issue</u> ........................................................ 10

  *Applicable Law* ..................................................................... 10

  *Facts* ...................................................................................... 14

  *Discussion* ............................................................................. 15

PRAYER ............................................................................................ 23

RULE 9.4 CERTIFICATE OF COMPLIANCE ......................................... 24

CERTIFICATE OF SERVICE .................................................................. 25

## INDEX OF AUTHORITIES
### Cases

*Blackshear v. State*, 385 SW3d 589
(Tex. Crim. App. 2012) ....................................................................... 22

*Coleman v. State*, 788 SW2d 369
(Tex. Crim. App. 1990) ................................................................. 11, 15

*Couret v. State*, 792 SW2d 106
(Tex. Crim. App. 1990) ....................................................................... 21

*Devoe v. State*, 354 SW3d 457
(Tex. Crim. App. 2011) .................................................................. 17 n.4

*Dickson v. State*, 246 SW3d 733
(Tex. App.-Houston [14th Dist.] 2007, pet. ref'd)......................... 18

*Dominguez v. State*, 62 SW3d 203
(Tex. App.-El Paso 2000, pet. ref'd) .............................................. 17

*Ex parte Hawkins*, 6 SW3d 554
(Tex. Crim. App. 1999) ....................................................................... 16

*Ex parte Padron*, 16 SW3d 31
(Tex. App.-Houston [1st Dist.] 2000, pet. ref'd)......................... 16

*Frias v. State*, No.03-12-00463-CR, 2014 WL 3410592
(Tex. App.-Austin July 10, 2014, pet. ref'd) (mem. op., not designated for publication) ............................................................... 23 n.5

*Guia v. State*, 723 SW2d 763
(Tex. App.-Dallas 1986, pet. ref'd) .............................................. 11

*Johnson v. State*, 68 SW3d 644
(Tex. Crim. App. 2002) ....................................................................... 17

*King v. State*, 189 SW3d 347
(Tex. App.-Fort Worth 2006, no pet.) ...................................... 13, 14

*Lane v. State*, 933 SW2d 504
(Tex. Crim. App. 1996) .......................................................................... 17, 18

*Llamas v. State*, 12 SW3d 469
(Tex. Crim. App. 2000) .................................................................... 12, 13, 20

*Llamas v. State*, 991 SW2d 64
(Tex. App.-Amarillo 1998), *aff'd*, 12 SW3d 469 (Tex. Crim. App. 2000).. 20

*Lopez v. State*, Nos. 03-06-00647-CR, 03-06-00659-CR, 2007 WL 2214615
(Tex. App.-Austin Aug. 1, 2007, pet. ref'd) (mem. op., not designated for
publication) ................................................................................................ 14

*Mock v. State*, 848 SW2d 215
(Tex. App.-El Paso 1992, pet. ref'd) .................................................. 10, 11, 15

*Nelson v. State*, 864 SW2d 496
(Tex. Crim. App. 1993) ...................................................................... 10, 11, 15

*Peña v. State*, 867 SW2d 97
(Tex. App.-Corpus Christi 1993, pet. ref'd) ................................................. 19

*Ramirez v. State*, No. 04-09-00323-CR, 2010 WL 480495
(Tex. App.-San Antonio Nov. 10, 2010, pet. ref'd) (mem. op., not designated
for publication) ..................................................................................... 23 n.5

*Ransom v. State*, 503 SW2d 810
(Tex. Crim. App. 1974) ........................................................................... 18, 19

*Rodriguez v. State*, 90 SW3d 340
(Tex. App.-El Paso 2001, pet. ref'd) ............................................................ 17

*Scott v. State*, 235 SW3d 255
(Tex. Crim. App. 2007) ....................................................................... 12 n.3, 22

*Segundo v. State*, 270 SW3d 79
(Tex. Crim. App. 2008) ........................................................................... 17, 19

*Silva v. State*, 831 SW2d 819
(Tex. App.-Corpus Christi 1992, no pet.)..................................................... 12

*Thornton v. State*, 986 SW2d 615
 (Tex. Crim. App. 1999) .................................................................. 12

*Tovar v. State*, 165 SW3d 785
(Tex. App.-San Antonio 2005, no pet.) ........................................ 16

*Trevino v. State*, 228 SW3d 729
(Tex. App.-Corpus Christi 2006, pet. ref'd) ........................... 13, 16

*Werner v. State*, 412 SW3d 542
(Tex. Crim. App. 2013) ................................... 10, 11, 13, 21, 22, 23

## Statutes and Rules

Tex. Code Crim. Proc. art. 21.24(a) ...................................... 10 n.1

Tex. Code Crim. Proc. art. 37.10(b) ...................................... 23 n.5

Tex. Penal Code § 3.01(1), (2) .................................................... 10

Tex. Penal Code § 3.02 .......................................................... 10, 11

Tex. Penal Code § 3.02(a) ........................................................... 10

Tex. Penal Code § 3.02(b) ...................................................... 11 n.1

Tex. Penal Code § 3.03(a) ........................................................... 23

Tex. Penal Code § 3.04(a) ....................................... 11, 12, 13, 22

Tex. Penal Code § 3.04(c) ...................................................... 11 n.2

Tex. Penal Code § 12.42(d) ............................................... 1, 23 n.5

Tex. Penal Code § 29.03(a)(2) ......................................................1

Tex. R. App. P. 38.1(i) ................................................................. 15

Tex. R. App. P. 43.2(b) ........................................................ 23 n.5

Tex. R. App. P. 44.2(b)................................................................ 13

**Treatises**

43 George E. Dix & John M. Schmolesky, *Texas Practice: Criminal Practice and Procedure* § 38.1 (3d ed. 2011) ................................................. 11

43 George E. Dix & John M. Schmolesky, *Texas Practice: Criminal Practice and Procedure* § 38.44 (3d ed. 2011) ........................................... 11

6 Michael B. Charlton, *Texas Practice: Texas Criminal Law* § 3.4 (2d ed. 2001) ............................................................... 15

No.13-14-00249-CR

JUAN VELA, Appellant,
VS.
THE STATE OF TEXAS, Appellee.
**************************
IN THE COURT OF APPEALS
FOR THE
THIRTEENTH DISTRICT OF TEXAS

**<u>BRIEF FOR THE STATE</u>**

TO THE HONORABLE COURT OF APPEALS:

Appellant was charged by indictment with three counts of aggravated robbery. C.R. at 5-6. *See* Tex. Penal Code § 29.03(a)(2). A jury found him guilty of each offense. C.R. at 74-76. After the jury found that Appellant was a habitual felony offender, *see* Tex. Penal Code § 12.42(d), it assessed his punishment at imprisonment for 45 years and a fine of $1000 for each offense. C.R. at 85-89. Appellant's only issue on appeal contends that the trial court erred in denying his severance motion.

**<u>Statement of Facts</u>**

The first count of the indictment alleged that Appellant, on or about October 5, 2013 in Nueces County, Texas, did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place Lamar Luna in fear of imminent bodily injury or death, and Appellant did then and there use or exhibit a deadly weapon, to wit: a knife, which in the manner of

its use or intended use was capable of causing serious bodily injury or death. C.R. at 5.

The second count of the indictment alleged that Appellant, on or about October 5, 2013 in Nueces County, Texas, did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally, knowingly or recklessly cause bodily injury to Amy Leija by cutting her with a knife, and Appellant did then and there use or exhibit a deadly weapon, to wit: a knife, which in the manner of its use or intended use was capable of causing serious bodily injury or death. C.R. at 6.

The third count of the indictment alleged that Appellant, on or about October 5, 2013 in Nueces County, Texas, did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place Damiana Torres in fear of imminent bodily injury or death, and Appellant did then and there use or exhibit a deadly weapon, to wit: a knife, which in the manner of its use or intended use was capable of causing serious bodily injury or death. C.R. at 6.

On October 5, 2013, Lamar Luna and Amy Leija were employed at the Dollar General on Morgan Street in Corpus Christi, Texas. 3 R.R. at 6 &

61. Leija was an assistant manager and Luna was a cashier. 3 R.R. at 7-8. When Luna came to work at 11:00 a.m., she went to the back office to count the money in her register. After a while, Leija also went to the office to get a key from Luna. 3 R.R. at 9. She saw Luna on the floor bound with duct tape. Leija screamed and Appellant pushed her into the office before she could get help. When he pushed her into the office, Leija's finger was cut by the kitchen knife Appellant was holding. 3 R.R. at 10 & 34. After Appellant asked her for it, she gave him the money from the safe near the registers. He took Luna's register, the register from the safe, and the change fund. Altogether, he stole about $750.

When Appellant and Leija returned to the office, he emptied a box and put a register and the change in it. He then walked out of the store with the box. 3 R.R. at 11-12. Before Appellant left, he told Leija to wait ten minutes before she called the police; if not, he had a gun. 3 R.R. at 25. After he left, Leija called the police and unbound Luna. 3 R.R. at 12. While Appellant was dealing with Leija, he also told her "[t]o calm down, that he just wanted the money from the safe." 3 R.R. at 18.

SX-1, a surveillance video from the store, was introduced into evidence without objection. 3 R.R. at 14. While viewing the video, Leija explained that prior to the robbery, Appellant walked down the aisles that

contained knives. Also, Appellant is observed walking around the store holding some detergent and a lighter. The lighter was later found by the hair products. 3 R.R. at 19. Some detergent had been spilled near the entrance of the back room. 3 R.R. at 20.

Besides the knife he was holding, Appellant was wearing a cap, a fleece sweater, baggy shorts, sunglasses, and gloves. 3 R.R. at 10 & 20. She described Appellant's vehicle which was seen on the video as being black. 3 R.R. at 21. On October 8, 2013, Leija was able to identify Appellant from a photo lineup. SX-2 & 9; 3 R.R. at 14-15 & 21. When she first saw Appellant's photo, she knew it was him. 3 R.R. at 43. Before she went to the lineup, she had seen a photo of Appellant posted on Facebook after he robbed a Wal-Mart on October 5, 2013. SX-10; 3 R.R. at 27 & 34-35. She also saw a photo posted by a lady after she was involved in a vehicle collision with Appellant that same day. 3 R.R. at 36-37. Appellant was wearing different clothing during the Wal-Mart robbery. 3 R.R. at 28.

Luna testified that when she arrived to work on the morning of October 5, 2013, she got her till and took it to the back office to count her money. When she finished counting her money, she turned around toward the door. Appellant then "popped up" in front of her with a knife to her face. When Luna told Appellant that she just had $100, he tied her hands and

4

covered her mouth with duct tape and told her to sit on the floor. 3 R.R. at 63.

When Leija came to the office, Appellant also threatened her with the knife. Leija then took him to the front of the store where the safe was. When they returned to the office, Appellant emptied a box and put the tills inside the box. Before he left through the front door, Appellant told them not to do anything because he had a gun. 3 R.R. at 64-65 & 68. Despite the circumstances, Luna described Appellant as having a "calm demeanor." 3 R.R. at 66.

On October 8, 2013, Luna had no problem identifying Appellant in a photo lineup. SX-52; 3 R.R. at 70. She had not seen any other photos of Appellant prior to the lineup. 3 R.R. at 72. She submitted her two-weeks' notice a few days after the robbery. 3 R.R. at 77.

Damiana Torres, an employee of the Wal-Mart on Greenwood, was working in the MoneyCenter of the store around noon on October 5, 2013. While she was helping a customer, she heard other customers say, "There's a fire, there's a fire." 3 R.R. at 136. She then noticed Appellant approaching the MoneyCenter. Appellant looked suspicious because he was wearing sunglasses and gloves. 3 R.R. at 136. When Torres finished with her customer, Appellant was right next to her holding a knife. 3 R.R. at 136-137.

When Appellant asked her for the money, she explained that a manager had to press a button to open her register. At that time, all of the managers were preoccupied with the fire. Appellant kept telling her to hurry up and be calm. Appellant finally pulled the money box out from under the register and walked away with the box. 3 R.R. at 137-138. As he was walking away, Appellant said, "Stay down, stay down. I have a gun in my backpack." He then exited through the grocery side doors. 3 R.R. at 138. Despite the circumstances, Torres described Appellant as being "real calm." 3 R.R. at 142.

SX-54, a surveillance video from the store, was introduced into evidence. 3 R.R. at 139. Torres was unable to identify Appellant when she was shown a photo lineup. 3 R.R. at 145. She was not asked if she could identify Appellant in the courtroom.

Ramiro Sanchez was at the Wal-Mart with his girlfriend on October 5, 2013. While he was walking down an aisle, he saw Appellant wearing a black beanie, a black shirt, black glasses, blue jeans, latex gloves, and a backpack. Sanchez then talked to a store employee about what he had just seen. 3 R.R. at 93.

When Sanchez and his girlfriend approached the registers, people were yelling, "Fire, fire." Sanchez then looked towards the MoneyCenter

and saw Appellant walking out of the MoneyCenter and exiting the store with a big wooden box. The employee in the MoneyCenter was crying and yelling, "I got robbed. I got robbed." 3 R.R. at 94. When he exited the store, Appellant was "walking calm, kind of just like trying to fit right in." 3 R.R. at 96. Sanchez believed Appellant had set the fire to facilitate the robbery. 3 R.R. at 95. A store employee told him Appellant left in a "blue . . . Ford Explorer or something." 3 R.R. at 97.

Though he was not shown a photo lineup, 3 R.R. at 97, Sanchez was able to identify Appellant in the courtroom. 3 R.R. at 96. He had previously seen a photo of Appellant on Facebook. 3 R.R. at 95.

Cynthia Tijerina was with Sanchez on the day of the robbery. When she first saw Appellant, he was walking towards the back of the Wal-Mart wearing a beanie, sunglasses, a black shirt, pants, gloves, and a backpack. When they heard someone yell, "Fire," she and Sanchez walked to the front entrance. At that time, she observed Appellant exiting the MoneyCenter with a wooden box. 3 R.R. at 108. Tijerina was able to identify Appellant in the courtroom. 3 R.R. at 109. Though she had not been asked to identify Appellant in a lineup, she had previously seen pictures of Appellant while watching the news on TV. 3 R.R. at 110.

On October 5, 2013, Nick Narvaez, a Corpus Christi police officer, was summoned to an accident in the 2300 block of Saratoga Boulevard involving a black Ford Explorer and a black Ford pickup truck. Appellant was the driver of the black Ford Explorer. 4 R.R. at 5-6 & 8. He was issued citations for not having a driver license and failing to control his speed. The collision occurred at 2:25 p.m. 4 R.R. at 7.

The State also introduced a surveillance video from the Dollar General at the intersection of Staples and Park. The video depicts Appellant in the store on October 5, 2013 at 9:19 a.m. SX-55; 3 R.R. at 147-149.

Katherine Pina, a crime scene investigator with the Corpus Christi Police Department, took photos of the scene at the Dollar General on Morgan Street. 3 R.R. at 48-49. Duct tape was sold at the store. 3 R.R. at 51-52. Pina also went to the Wal-Mart at around 1:00 p.m. Firefighters were trying to clear out the smoke from the fire. 3 R.R. at 55. Appellant's knife was found in the MoneyCenter area of the store on the floor mat next to the register. 3 R.R. at 56. Because Appellant wore gloves, she was unable to obtain any latent fingerprints. 3 R.R. at 57. The fire was started in the area of the store where toilet paper and paper towels may be found. Some toilet paper had been set on fire. There was a "very strong odor of detergent" and a light blue liquid on the floor. 3 R.R. at 58-59.

Officer Amado Garcia responded to the aggravated robbery call at the Dollar General. When Garcia arrived at the store, a male witness told him that he had seen Appellant get into a black 2000 model Ford Explorer. 3 R.R. at 87.

Officer Ralph Torres was dispatched to the Wal-Mart on Greenwood. 3 R.R. at 120. A store employee, Joe Ibarra, told Torres that "he possibly saw a second suspect." 3 R.R. at 123.

Officer Luis Flores spoke with Jacob Reyna, a cart attendant at Wal-Mart, who told him that he saw Appellant walking towards a blue 4-door Ford Explorer. 3 R.R. at 129. Flores also saw a kitchen knife on the floor in the financial center. 3 R.R. at 130-131. It was determined that Appellant had taken the knife from the kitchen area section of the store. Flores found the empty package that had contained the knife. 3 R.R. at 132.

Additional facts necessary for a resolution of Appellant's issue will be recited in the reply to said issue.

## **Summary of the Argument**

1. Reply to Appellant's Issue:

   A. The trial court did not err in denying Appellant's motion because Appellant was not entitled to a severance of just one of the charged offenses.

   B. Appellant's argument incorrectly treats the offenses alleged in the first two counts of the indictment as one offense.

C. A review of the entire record reveals that Appellant's substantial rights were not affected by the trial court's denial of his motion.

## **Argument**

1. <u>Reply to Appellant's Issue</u>:

In his only issue, Appellant contends that the trial court erred in denying his severance motion. Appellant's Brief at 2.

## *Applicable Law*

"A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode." Tex. Penal Code § 3.02(a). Offenses arise out of the same criminal episode if "(1) the offenses are committed pursuant to the same transaction (a single crime spree) or more than one transaction if they are connected by a 'common scheme or plan'; or (2) 'the offenses are the repeated commission of the same or similar offenses.'" *Werner v. State*, 412 SW3d 542, 546 (Tex. Crim. App. 2013) (quoting Tex. Penal Code § 3.01(1), (2)). Prosecuting connected or related charges in a single criminal action promotes judicial economy. *Id.*

The decision to consolidate or join cases pursuant to § 3.02 belongs to the State. *See Nelson v. State*, 864 SW2d 496, 498 (Tex. Crim. App. 1993); *Mock v. State*, 848 SW2d 215, 219 (Tex. App.-El Paso 1992, pet. ref'd).[1] "A

---

[1] "Joinder" occurs when multiple offenses are alleged in the same charging instrument. Tex. Code Crim. Proc. art. 21.24(a). "Consolidation" occurs

defendant does *not* have a right to consolidate offenses committed in the same criminal episode." *Nelson*, 864 SW2d at 498 (emphasis in original); *see also Mock*, 848 SW2d at 218. Additionally, "the decision to consolidate prosecutions is not within the discretion of the trial court." *Guia v. State*, 723 SW2d 763, 768 (Tex. App.-Dallas 1986, pet. ref'd).

"Whenever two or more offenses have been consolidated or joined for trial under Section 3.02, the defendant shall have a right to a severance of the offenses." Tex. Penal Code § 3.04(a). This section "grants defendants an absolute right to sever most charges that have been consolidated under Section 3.02." *Werner*, 412 SW3d at 546.[2]

"'Severance' occurs when joined or consolidated charges are 'split apart' so that each charge can be tried separately." 43 George E. Dix & John M. Schmolesky, *Texas Practice: Criminal Practice and Procedure* § 38.1 at p. 389 (3d ed. 2011); *see also id.* at § 38.44 ("[T]he substance of the demand must make it clear that the defendant is objecting to joint trial of joined or consolidated charges. . . . A demand for severance states merely that the defendant wishes to be tried for only one offense in a single trial . . . ."); *Coleman v. State*, 788 SW2d 369, 373 (Tex. Crim. App. 1990) (proper

when offenses alleged in separate charging instruments are tried at the same time. Tex. Penal Code § 3.02(b).

[2] § 3.04(c) provides that the absolute right to a severance is not applicable to certain offenses. Aggravated robbery is not one of those offenses.

severance motion must apprise trial court that it is "a motion to sever properly joined . . . offenses for separate trials"); *Silva v. State*, 831 SW2d 819, 823 (Tex. App.-Corpus Christi 1992, no pet.) ("The appellant may timely request a severance so that he is tried for each count in a separate trial.").[3]

The right to a mandatory severance under § 3.04(a) addresses two legitimate concerns:

> (1) that the jury may convict a "bad man" who deserves to be punished-not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes, he probably committed the crime charged.

*Llamas v. State*, 12 SW3d 469, 471-472 (Tex. Crim. App. 2000). Thus, "[t]he primary reason for a defendant to sever offenses is to limit the presentation of evidence of the defendant's wrongdoing to one offense, rather than allowing presentation of evidence of multiple offenses." *Thornton v. State*, 986 SW2d 615, 617 (Tex. Crim. App. 1999). However, the granting of a severance does not preclude the admission of extraneous offenses pursuant to Rule 404(b) of

---

[3] When offenses that are subject to mandatory severance are joined or consolidated with offenses that are not subject to mandatory severance, a defendant may seek severance of those offenses that are subject to mandatory severance. *See Scott v. State*, 235 SW3d 255, 258 (Tex. Crim. App. 2007).

the Texas Rules of Evidence. *Werner*, 412 SW3d at 549; *King v. State*, 189 SW3d 347, 354 (Tex. App.-Fort Worth 2006, no pet.).

If a trial judge erroneously denies a severance motion, the error must be reviewed under Rule 44.2(b) of the Texas Rules of Appellate Procedure. *Llamas*, 12 SW3d at 470. "In order to properly conduct a harm analysis under Rule 44.2(b), an appellate court need only determine whether or not the error affected a substantial right of the defendant. To make this determination, appellate courts must decide whether the error had a substantial or injurious effect on the jury verdict." *Id.* at 471 n.2. Harm must be assessed "after reviewing the entirety of the record, including the evidence, jury charge, closing arguments, voir dire, and any other relevant information." *Werner*, 412 SW3d at 547.

Considering the two concerns addressed by § 3.04(a), courts have generally found the denial of a severance harmless if the evidence of one offense would have been admissible in the separate prosecution of the other offense. *E.g., Werner*, 412 SW3d at 549 (focusing "on whether evidence was admissible in the separate cases"); *Trevino v. State*, 228 SW3d 729, 733 (Tex. App.-Corpus Christi 2006, pet. ref'd) (no reversible error in failing to sever murder and aggravated assault offenses because the jury would have heard the same evidence as same transaction contextual evidence in separate trials);

*King*, 189 SW3d at 354 (listing cases); *Lopez v. State*, Nos. 03-06-00647-CR, 03-06-00659-CR, 2007 WL 2214615, at *3 (Tex. App.-Austin Aug. 1, 2007, pet. ref'd) (mem. op., not designated for publication) (severance error did not affect appellant's substantial rights because, had the offenses been tried separately, it was probable that evidence from each offense would have been admissible in both trials to refute defensive theories).

*Facts*

During docket call on March 27, 2014, Appellant urged his motion to sever offenses that had been filed the same day. C.R. at 59; Supp. 2 R.R. at 3-4. Appellant stated, "Your Honor, we are asking on this cause number to sever Count 3 from Counts 1 and 2. Counts 1 and 2 both involve a robbery at the same location, whereas Count 3 involves an alleged robbery at another location on the same date. And we would like to try the 1 and 2 together, and then try 3 separately." The trial court denied the motion. C.R. at 107; Supp. 2 R.R. at 4.

Before voir dire began on March 31, 2014, Appellant stated, "Your Honor, we are ready on Counts 1 and 2, but we're going to announce not ready on Count 3 based upon our motion for severance. I understand the Court is probably going to make us go forward on all 3 counts." 2 R.R. at 4. Appellant explained that he did not announce ready on Count 3 because he did not want

to forfeit any appellate issues regarding his severance request. 2 R.R. at 5. The trial court again denied his request. C.R. at 107; 2 R.R. at 6.

*Discussion*

As in *Coleman*, the threshold issue in this case is the nature of Appellant's motion. 788 SW2d at 371. Appellant requested that the offense alleged in Count 3 be severed from the offenses alleged in Counts 1 and 2. Supp. 2 R.R. at 3-4. He now contends the trial court erred in denying his motion because it resulted "in a joint trial for two separate robberies." He seeks "two new trials – one for Counts One and Two related to Dollar General and the other for Count Three related to Wal-Mart." Appellant's Brief at 6. Appellant does not provide the Court with any authority in support of his contention that he was entitled to a severance of one of the counts from the other two counts. Likewise, he also fails to provide the Court with any authority in support of his request for two new trials. *See* Tex. R. App. P. 38.1(i). Appellant is essentially attempting to usurp the State's right to join or consolidate offenses. *See Nelson*, 864 SW2d at 498; *Mock*, 848 SW2d at 219. "Severance of the joined offenses is the only portion of the consolidation process over which the defendant has any control." 6 Michael B. Charlton, *Texas Practice: Texas Criminal Law* § 3.4 at p.36 (2d ed. 2001).

Additionally, Appellant attempts to show that he was harmed by the denial of his motion by incorrectly treating the offenses alleged in the first two counts of the indictment as one offense. Appellant's Brief at 6, 7, 9, 15, 18, 20, 21, & 22. The allowable unit of prosecution for robbery is each victim. *Ex parte Hawkins*, 6 SW3d 554, 560 (Tex. Crim. App. 1999) ("Prosecuting the applicant twice for robbery did not violate the Double Jeopardy Clause of the Fifth Amendment because the allowable unit of prosecution for robbery is each victim, and he assaulted two victims in the course of committing theft."); *Ex parte Padron*, 16 SW3d 31, 35 (Tex. App.-Houston [1st Dist.] 2000, pet. ref'd). Thus, the State properly charged Appellant with two offenses for his conduct at the Dollar General.

If Appellant had requested a proper severance of all the charges, evidence of both of the offenses alleged in Counts 1 and 2 would have been admissible as same transaction contextual evidence in the separate trial of each offense. "Same transaction contextual evidence results when an extraneous matter is so intertwined with the State's proof of the charged crime that avoiding reference to it would make the State's case incomplete or difficult to understand." *Trevino*, 228 SW3d 733; *see also Tovar v. State*, 165 SW3d 785, 795 (Tex. App.-San Antonio 2005, no pet.) (no reversible error in failing to sever charges of producing sexual performance by a child and possession of

child pornography); *Rodriguez v. State*, 90 SW3d 340, 358 (Tex. App.-El Paso 2001, pet. ref'd) (no reversible error in failing to sever two counts of engaging in organized criminal activity); *Dominguez v. State*, 62 SW3d 203, 208 (Tex. App.-El Paso 2000, pet. ref'd) (no reversible error in failing to sever possession of controlled substance and failure to stop and render aid charges).[4]

Moreover, as Appellant notes in his brief, his defense consisted of challenging the State's witnesses regarding their ability to identify him as the perpetrator. Appellant's Brief at 21. "One of the main rationales for admitting extraneous-offense evidence is to prove the identity of the offender." *Segundo v. State*, 270 SW3d 79, 88 (Tex. Crim. App. 2008). "To be admissible to show identity, an extraneous offense must be so similar to the offense charged that the offenses are marked as the accused's handiwork." *Lane v. State*, 933 SW2d 504, 519 (Tex. Crim. App. 1996). "[S]ufficient similarity may be shown by proximity in time and place *or* by a common mode of committing the offenses." *Id.* (emphasis in original). "The exactness [in similarity] that might be required of an offense committed at a more remote period of time might not necessarily be required for an offense committed within a very short period of time." *Johnson v. State*, 68 SW3d 644, 651 (Tex. Crim. App. 2002) ("The

---

[4] A limiting instruction is not required when evidence is admitted as same transaction contextual evidence. *Devoe v. State*, 354 SW3d 457, 471 (Tex. Crim. App. 2011).

extraneous offenses were highly probative because they placed the primary offense in context of the scheme carried out that night and because they tended to prove appellant's identity as the perpetrator."). The fact that a defendant might have changed his clothing or appearance is not controlling. *Ransom v. State*, 503 SW2d 810, 813-814 (Tex. Crim. App. 1974). "Some dissimilarities between the charged crime and the extraneous offense do not automatically make the extraneous offense inadmissible." *Dickson v. State*, 246 SW3d 733, 743 (Tex. App.-Houston [14th Dist.] 2007, pet. ref'd) (evidence of extraneous aggravated robbery admitted to prove identity in aggravated robbery trial).

In *Ransom*, the appellant was convicted of robbery. *Id.* at 811. On appeal, he complained about the admission of an extraneous offense, another robbery, during the guilt-innocence phase of the trial. *Id.* The Court held that the extraneous offense was admissible to prove identity because "both offenses were robberies committed at gunpoint in Dallas three days apart, while appellant, identified as the perpetrator of both, was aided by a confederate." *Id.* at 813; *see also Lane*, 933 SW2d at 519 (discussing *Ransom*).

In the instant case, the similarity of all three offenses is shown by proximity in time and place *and* by a common mode of committing the offenses. All three offenses occurred within about an hour of each other. All three offenses occurred in Corpus Christi. In all three offenses, Appellant

accosted a female employee of a retail store with a kitchen knife. In all three offenses, Appellant told the victims he had a gun that he did not display. In all three offenses, Appellant left the store with a till or money box. In all three offenses, Appellant wore sunglasses and gloves. In all three offenses, Appellant was described as being calm. Thus, there are more similarities between the offenses in this case than those in *Ransom*.

Additionally, even Appellant acknowledges that "[t]he detergent/fabric softener and lighter/fire link between the two scenes certainly indicate a relationship between the two scenes . . . ." Appellant's Brief at 17. "This is 'the mark of Zorro' mode of proving identity; it is a remarkably unusual fact, in which a single detail suffices to establish identity." *Segundo*, 270 SW3d at 88 (appellant's DNA found in both murder victims constituted his "calling card"); *accord Peña v. State*, 867 SW2d 97, 99 (Tex. App.-Corpus Christi 1993, pet. ref'd) (holding that repeated use of same vehicle in different burglaries constituted a "signature" characteristic). The use of detergent as a criminal instrument certainly seems to qualify as a remarkably unusual fact that constitutes a "signature" characteristic. As Appellant notes in his brief, "[t]he sheer existence of two similar crimes on the same day lessened the strength of the defense." Appellant's Brief at 21.

Appellant's contention that this case "closely resembles" *Llamas* does not withstand scrutiny. Appellant's Brief at 16. In *Llamas*, the appellant was detained and arrested after he was observed driving a pickup truck with obliterated identification numbers. Officers then inventoried the truck and discovered an envelope containing cocaine. *Llamas v. State*, 991 SW2d 64, 66 (Tex. App.-Amarillo 1998), *aff'd*, 12 SW3d 469 (2000). The appellant was subsequently indicted for tampering with identification numbers and possession of cocaine by two separate indictments. On appeal, he contended that the trial court erred in consolidating the two charges for trial over his objection. *Id.* The Amarillo Court of Appeals and the Court of Criminal Appeals agreed. In upholding the judgment of the court of appeals, the Court of Criminal Appeals said, "Clearly, evidence as to the cocaine charge was admitted in this trial that would otherwise not be relevant to the possession of altered identification numbers and vice versa." 12 SW3d at 472.

The Court of Criminal Appeals long ago explained why the cocaine possession charge should not have been prosecuted with the altered identification numbers charge:

> A . . . rule that has often been stated by this Court is that the State is entitled to show the circumstances surrounding *an arrest*. However, this rule is restricted by the same test as any extraneous matter, that is, the evidence must be relevant to a material issue in the case and the

> probative value must outweigh the prejudicial value. Therefore, to simply state that something is admissible merely because it is a circumstance of the arrest is too broad a statement.

*Couret v. State*, 792 SW2d 106, 107 (Tex. Crim. App. 1990) (emphasis in original and citations omitted). In *Couret*, a hypodermic needle was found in the appellant's possession at the time he was arrested for a burglary. *Id.* The Court held that the trial court erred in admitting evidence of the hypodermic needle at the appellant's burglary trial. *Id.* at 108.

Appellant's other arguments are equally unconvincing.

Though Appellant notes that one of the voir dire panel members appeared to have trouble with the fact that Appellant was charged with multiple offenses, Appellant's Brief at 17-18; 2 R.R. at 124-125, that panel member did not serve on the jury. 2 R.R. at 169 & 178-179. She was also the only one of the eighty panel members who expressed any such reservation. And even if the offenses had been severed, the jury would have been permitted to consider evidence of the other two offenses when deliberating on one offense. *See Werner*, 412 SW3d at 551.

Though Appellant also complains that one small portion of the jury charge may "have impressed upon the jury that the evidence of each crime overlapped where the actual evidence itself may not have," Appellant's Brief at 18, Appellant did not object to the charge. Furthermore, when viewed in its

entirety, the charge made it clear that Appellant was charged with three separate offenses that required three separate verdicts. C.R. at 65-76. And as noted above, the evidence of the three crimes did overlap.

Appellant also complains about the prosecutor's argument "linking the two crimes in order to emphasize proof beyond a reasonable doubt." Appellant's Brief at 20. As noted above, there were several links between the three crimes. *See Werner*, 412 SW3d at 551.

Though Appellant also contends that his strategy could have changed if a severance had been granted, Appellant's Brief at 22, he does not state what other viable defense would have been available to him had a severance been granted. *See Werner*, 412 SW3d at 548 n.35; *Scott*, 235 SW3d at 261.

Finally, Appellant notes that his trial counsel announced that he was not ready on Count 3. Appellant's Brief at 22. But his trial counsel explained that he was announcing not ready to avoid forfeiting any appellate issues regarding his severance motion. 2 R.R. at 4-5. A defendant is not entitled to a severance if he is not ready for trial. *See* Tex. Penal Code § 3.04(a). Because Appellant never requested a continuance, he never filed a sworn motion for continuance. Consequently, the issue is moot. *See Blackshear v. State*, 385 SW3d 589, 591 (Tex. Crim. App. 2012).

` Appellant also fails to note that his sentences will be served concurrently because of the joinder of the offenses. *See* Tex. Penal Code § 3.03(a); *Werner*, 412 SW3d at 551-552.

In conclusion, Appellant was not entitled to a severance of just one of the offenses alleged in the indictment. Moreover, a review of the entire record reveals that Appellant's substantial rights were not affected by the denial of his motion.

Accordingly, Appellant's issue should be overruled.

## Prayer

For the foregoing reasons, the State respectfully requests that the judgment of the trial court be affirmed.[5]

---

[5] As noted above, after finding that Appellant was a habitual felony offender, the jury assessed his punishment at imprisonment for 45 years and a fine of $1,000 for each offense. C.R. at 85-89. The judgment reflects the imposition of the fines. C. R. at 95. Section 12.42(d) of the Penal Code does not authorize the imposition of a fine. The Court may modify the trial court's judgment by deleting the fine for each conviction. Tex. Code Crim. Proc. art. 37.10(b); Tex. R. App. P. 43.2(b); *Frias v. State*, No. 03-12-00463-CR, 2014 WL 3410592, at *10 (Tex. App.-Austin July 10, 2014, pet. ref'd) (mem. op., not designated for publication) (deleting fine assessed against habitual felony offender); *Ramirez v. State*, No. 04-09-00323-CR, 2010 WL 4840495, at *2 (Tex. App.-San Antonio Nov. 24, 2010, pet. ref'd) (mem. op., not designated for publication) (same).

Respectfully submitted,


/s/ Adolfo Aguilo, Jr.
Adolfo Aguilo, Jr.
State Bar No. 00936750
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
adolfo.aguilo@co.nueces.tx.us


## **Rule 9.4 Certificate of Compliance**

In compliance with Texas Rule of Appellate Procedure 9.4(i), I certify

that the number of words in this brief, including those matters listed in Rule

9.4(i)(1), is 6,363.

/s/ Adolfo Aguilo, Jr.
Adolfo Aguilo, Jr.

## Certificate of Service

This is to certify that this brief was emailed to Appellant's counsel,

Danice L. Obregon (danice@obregonlaw.com), on February 2, 2015.


<div style="margin-left: 40%;">

/s/ Adolfo Aguilo, Jr.
Adolfo Aguilo, Jr.

</div>