

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00727-CR

Wesley **HENDERSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2021CR4006
Honorable Kevin M. O'Connell, Judge Presiding

Opinion by:    Lori Massey Brissette, Justice

Sitting:        Irene Rios, Justice
                Lori Massey Brissette, Justice
                Adrian A. Spears II, Justice

Delivered and Filed: December 3, 2025

AFFIRMED

Appellant Wesley Henderson appeals his conviction for continuous sexual abuse of a child.

He argues the trial court abused its discretion when it admitted certain evidence under Article

38.37 of the Code of Criminal Procedure, and the State violated his right to due process when it

failed to correct false or misleading testimony.[1] Based upon our review of the law and the record, we affirm the trial court's judgment.

## BACKGROUND

A jury found Henderson guilty of continuous sexual abuse of his granddaughter, C.G.[2] *See* TEX. PEN. CODE § 21.02. The trial court sentenced him to ninety-nine years with the Texas Department of Criminal Justice Institutional Division and imposed a $10,000 fine. Henderson moved for a new trial, which was denied by operation of law. *See* TEX. R. APP. P. 21.8. This appeal followed.[3]

## ARTICLE 38.37

Before trial, the State filed notice to introduce evidence that Henderson committed two or more sexual acts against a different granddaughter, A.F., between December 23, 2014 and May 15, 2020, while she was under fourteen years of age. Henderson moved to exclude the evidence. The trial court held a hearing and denied Henderson's motion, permitting the State to introduce the evidence.

Henderson argues the trial court abused its discretion in admitting evidence of his alleged prior sexual abuse of A.F. under Article 38.37. He specifically contends the jury could not have found he committed the offense beyond a reasonable doubt, and the evidence was substantially more prejudicial than probative. We disagree.

---

[1] The Honorable Kevin M. O'Connell presided over the Article 38.37 hearing and the trial and denied on the record Henderson's motion to exclude the article 38.37 evidence. But the order admitting the evidence was signed by the Honorable Catherine Torres-Stahl.

[2] To protect the identity of minor children in this appeal, we refer to the children by their initials. *See* TEX. R. APP. P. 9.10(a)(3), (b).

[3] Henderson was granted leave to file an out of time appeal by the Court of Criminal Appeals. *See Ex parte Henderson*, No. WR-95,946-01, 2024 WL 4553989, at *1 (Tex. Crim. App. Oct. 23, 2024).

A. **Standard of Review and Applicable Law**

We review a trial court's decision to admit evidence pursuant to article 38.37 for an abuse of discretion. *See, e.g.*, *Singleton v. State*, 631 S.W.3d 213, 217 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd); *Ryder v. State*, 514 S.W.3d 391, 399 (Tex. App.—Amarillo 2017, pet. ref'd).

Section 2 of Article 38.37 is applicable in cases involving an underlying offense of continuous sexual abuse of a child, making it applicable here. TEX. CODE CRIM. PRO. 38.37, § 2(a). Section 2 further provides that evidence a defendant has committed continuous sexual abuse of a separate child may be admitted "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity" therewith. *Id.* § 2(b).[4] A trial court must hold a hearing and determine if "the evidence likely to be admitted at trial" will adequately support a finding by the jury the defendant committed the extraneous offense beyond a reasonable doubt. *Id.* § 2-a. During a Section 2-a hearing, the trial court is the factfinder and entitled to credit, weigh, and draw reasonable inferences from witness testimony. *See, e.g.*, *Deggs v. State*, 646 S.W.3d 916, 924 (Tex. App.—Waco 2022, pet. ref'd).

Here, the notice provided Henderson intentionally and knowingly engaged in sexual contact with A.F. with intent to gratify his sexual desire by touching the child's genitals, having the child touch his genitals, as well as by penetrating the sexual organ of the child with his sexual organ. Texas Penal Code § 21.02 provides a person over seventeen years old commits the offense of continuous sexual abuse of a child under fourteen years old if, during a period of thirty or more days, "the person commits two or more acts of sexual abuse." TEX. PEN. CODE § 21.02(b). "Sexual abuse" is "any act" violating sections 21.11(a)(1) (indecency with a child), 22.011 (sexual assault

---

[4] Section 38.37(b) is an exception to the prohibition, in Rules 404 and 405 of the Texas Rules of Evidence, of the use of extraneous offense evidence to show a defendant's character. *See* TEX. CODE CRIM. PRO. 38.37, § 2(b).

by penetration of a child), or 43.25 (sexual performance by a child).[5] TEX. PENAL CODE § 21.02(c). The State's notice matches the foregoing provisions of the Penal Code, and the State therefore sought to introduce evidence Henderson committed continuous sexual abuse of A.F. through indecency, penetration, and sexual performance.

### B. Analysis

#### 1. Whether Evidence Demonstrated Henderson Committed Sexual Abuse Beyond a Reasonable Doubt

Henderson argues the jury could not have found he sexually abused A.F. beyond a reasonable doubt because A.F.'s testimony included inconsistencies, proving she was not credible. We disagree.

A.F. testified Henderson, on multiple occasions, touched and rubbed her vagina with his hands beginning around six years old through her twelfth birthday.[6] She testified the abuse occurred in her grandmother's room, the grandkids' room, in Henderson's office, while she was asleep, and at the family's vacation home in Maine when she was about nine or ten years old.[7] She testified the abuse consisted of Henderson touching her vagina with his hands. He also told her he was "giving [her] the love that my mother never gave me."

Defense counsel introduced a letter written by A.F. detailing the abuse, confirming many of the details of A.F.'s testimony. In the letter, A.F. stated she was about five or six years old when

---

[5] A person commits the offense of indecency with a child if the person has sexual contact with the child under seventeen years old. TEX. PEN. CODE § 21.11. Sexual contact includes any touching of any part of the body of a child intended "to arouse or gratify . . . sexual desire." *Id.* § 21.11(c). Sexual assault of a child by penetration includes the penetration of the anus or sexual organ of a child. *Id.* § 22.011(a)(2). Sexual performance by a child means "any performance . . . that includes sexual conduct by a child," and sexual conduct includes "sexual contact." *Id.* § 43.25(a)(1)–(2).

[6] On one occasion, she stopped him. She testified on her twelfth birthday he kept "trying to touch me and like grab me," but she "didn't really let anything happen" because she kept moving away.

[7] She testified they were in Maine alone for a week. A.F. also testified when she slept in the bed with her step-grandfather and her grandmother, which took place until the age of ten, nothing ever happened.

Henderson's abuse of her started and twelve when it ended. Henderson abused her whenever they were alone including in the car, motor home, and bedroom, as well as the vacation house in Maine. She stated he would "caress" her body under her clothes. He would not penetrate her but did rub her "down there." Her testimony reiterated the details of the letter.

A.F. testified she waited to say something because she felt guilty and did not want to cause any trouble for the family. She eventually told her cousin C.G., the victim in the case, as well as elementary school counselors in December 2020.[8] She later told police detectives and ChildSafe representatives she had been touched inappropriately. She told police Henderson touched the front part of her body, there was never any penetration, and the last time it occurred was during spring break of 2020. In June 2020, when first asked by her mom and grandma, she denied Henderson abused her. She further testified she did not remember all the conversations she had with people and that she had forgotten some details.

On cross-examination, A.F. testified the last time Henderson tried to touch her was her birthday in May 2020 and that when she told officers the last incident was spring break of 2020, that was not true. She clarified that during spring break he grabbed her thighs in the car. When asked whether she remembered that during her ChildSafe interviews she stated that during the spring break incident he raped her in a restroom and he touched her on her vagina on her twelfth birthday, she testified she did not remember. She also testified she did not remember saying that during spring break he threw her on the bed, spread her legs, or that he hurt her when he penetrated her with his penis. A.F. also clarified Henderson tried to touch her on her birthday, but did not do so.[9]

---

[8] She testified C.G. never told her it was happening to her.

[9] She further testified she did not tell anyone before her testimony that day that the abuse in Maine happened in two different bedrooms.

Here, because the trial court admitted the evidence, we presume the trial court credited A.F.'s testimony, gave it weight, and drew any reasonable inferences from it. *See Deggs*, 646 S.W.3d at 924 ("In the Article 38.37, Section 2-a hearing, the trial court is the fact finder and as such, is the sole arbiter of the credibility of the witness and the weight given to his or her testimony." (citing *Johnson v. State*, 571 S.W.2d 170, 173 (Tex. Crim. App. 1978))). The trial court was entitled to credit A.F.'s testimony as well as the letter she wrote and give great weight to such evidence, evidence which establishes Henderson committed the separate crime of continuous sexual abuse of A.F. when he touched her vagina more than once over a period of years to gratify his sexual desires. TEX. PEN. CODE §§ 21.02(b); 21.11(c). The trial court therefore did not abuse its discretion when it determined the evidence would adequately support a finding by the jury Henderson committed continuous sexual abuse of A.F. beyond a reasonable doubt. TEX. CODE CRIM. PRO. 38.37, § 2-a.

## 2. Rule 403 Balancing

Henderson further argues the trial court abused its discretion when it admitted the Article 38.37 evidence because A.F.'s testimony was substantially more prejudicial than probative, went to conduct completely unrelated to what Henderson was on trial for, the State had no need for it, and it caused undue delay. We disagree.

### a. Law

Even if a court determines the article 38.37 evidence is admissible for any bearing it has on relevant matters, including the character of the defendant and acts performed in conformity therewith, Rule 403 may still preclude its admission. *See* TEX. CODE CRIM. PRO. 38.37, § 2; *Perkins v. State*, 664 S.W.3d 209, 216 (Tex. Crim. App. 2022) (providing Rule 403 applies to

extraneous offense evidence); *Distefano v. State*, 532 S.W.3d 25, 37 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (same, applying to article 38.37 evidence).

In addressing a Rule 403 objection, the trial court must balance: (1) how compelling the evidence is in terms of making a consequential fact more or less probable; (2) the evidence's potential to impress the jury in some irrational, indelible way; (3) the time to develop the evidence, distracting the jury from the indicted offense; and (4) the State's need for the evidence. *See, e.g.*, *Perkins*, 664 S.W.3d at 216.[10] These factors may significantly overlap in application. *Gigliobianco v. State*, 210 S.W.3d 637, 642 (Tex. Crim. App. 2006). We are also mindful that Rule 403 ought to "be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant in . . . 'he said, she said' cases." *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009); *Deggs*, 646 S.W.3d at 925 (same, quoting *Hammer* and providing that, because article 38.37 evidence is probative on issues of intent and defendant's character or propensity to commit sexual assaults on children, its probative value is generally not substantially outweighed by the danger of unfair prejudice, confusing issues, misleading jury, undue delay, or needlessly presenting cumulative evidence); *Dickson v. State*, 246 S.W.3d 733, 739 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) ("Rule 403 favors admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial.").

---

[10] We may not simply conclude the trial court conducted the requiring balancing test; we must examine the trial court's ruling against the four factors. *See Perkins*, 664 S.W.3d at 216.

### b. Four Factors Analysis

### i. Probative Value

Henderson argues the evidence was not probative because (1) A.F.'s inconsistent testimony called her credibility into question, and (2) it relates to a completely separate allegation. But, as we have already explained, the trial court was entitled to credit A.F.'s testimony, and we therefore reject Henderson's first contention. *See* TEX. R. APP. P. 47.1. As to Henderson's second point: that evidence of continuous sexual abuse of A.F. is admissible even though it is an extraneous offense is made plain by the language of Article 38.37. TEX. CODE CRIM. PRO. 38.37, § 2(b) (providing evidence defendant committed separate offense of continuous sexual abuse of child admissible for its bearing on character of defendant and acts performed in conformity with character). Indeed, Section 2 plainly states we do not default to the traditional rules of evidence like Rules 404 and 405. TEX. CODE CRIM. PRO. 38.37, § 2(b) (providing rule is applied notwithstanding Rules 404 and 405 of the Texas Rules of Evidence). In other words, if evidence of an extraneous offense is admissible under Article 38.37, it is because such evidence is probative of relevant matters, including the defendant's character and acts performed in conformity with that character. *See* TEX. CODE CRIM. PRO. 38.37, § 2(b). And as relevant evidence of character, it carries a presumption it is more probative than prejudicial on those matters. *See Deggs*, 646 S.W.3d at 925; *Dickson*, 246 S.W.3d at 739. This is what the trial court found, explaining during its Article 38.37 evidentiary ruling that its probative value outweighed its prejudicial effect, specifically singling out that it dispelled Henderson's other contentions as a motive for C.G.'s testimony including that "these allegations were . . . made up due to [the grandparents'] divorce[] [and] due to . . .a [family] money grab."

C.G.'s and A.F.'s trial testimony support the probative value of the evidence. C.G. testified Henderson was her step-grandfather, and he abused her multiple times beginning when she was eight years old through age twelve or thirteen.[11] She recalled the abuse consisting of inappropriate touching all over her body and massaging it, including her vagina. Henderson would tell her he was giving her the love she was not receiving elsewhere. Henderson used his penis to rub her and made her touch it once. Henderson's abuse occurred at his house in the bedroom and in the RV. Henderson abused her while she was asleep when they were in Maine. C.G. also testified she was sixteen when she told a family member for the first time—a few days after Henderson served his divorce papers on her step-grandmother.

During cross-examination, C.G. agreed she had previously stated to a forensic interviewer at ChildSafe that the abuse happened over her clothes. She also testified she previously told the forensic interviewer she did not recall when the abuse stopped. C.G. told the defense's investigator, and not the forensic interviewer, that Henderson penetrated her with his fingers in Maine, with her understanding that that meant rubbing the outside of her vagina with his fingers. She was also uncertain as to whether an incident where her step-grandmother caught Henderson abusing her took place in front of her siblings or not. She conceded when her grandmother first asked her about it, she told her nothing happened. C.G. also did not recall some of her statements to the forensic interviewer, and acknowledged some of the statements she made to a defense investigator were different than those made to the forensic interviewer. She also testified she omitted some things when speaking with the forensic interviewer because she was scared. She did not remember writing a letter to her pastor, nor the contents of any such letter. C.G. conceded Henderson owned an

---

[11] C.G. testified she told a defense investigator Henderson abused her over 100 times and reiterated at trial that that figure was possible.

engineering company, but she denied she was filing a separate lawsuit to secure some of his wealth.[12]

The testimony of C.G. and A.F. establish Henderson was grandfather to both children, touched their vagina on numerous occasions, began touching both between the ages of six and eight years old, the abuse ended when they were both approximately twelve years old, and Henderson told both of them he was providing them the love they were not getting elsewhere. Both also denied, on cross-examination, that their testimony had anything to do with potential civil litigation against Henderson. The testimony was therefore highly probative of Henderson's character and acts performed in conformity with his character. *See* TEX. CODE CRIM. PRO. 38.37, § 2(b); *Deggs*, 646 S.W.3d at 925; *Dickson*, 246 S.W.3d at 739.[13]

Thus, this factor weighs in favor of admission of the Article 38.37 evidence.

### ii. Potential to Impress Jury in Irrational, but Nevertheless Indelible Way

Henderson argues A.F. was the second to last witness to testify for the State and testified on a different day creating potential for the jury to focus on her testimony over C.G.'s testimony. However, as Henderson admits, the trial court provided a limiting instruction regarding the evidence and, as Henderson correctly notes courts "generally presume the jury follow[ed] the trial court's instructions in the manner presented." *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). Still, Henderson contends, without citation to any authority, that a general limiting instruction is not enough in cases involving extraneous offense evidence of a separate sex offense

---

[12] Once A.F. was permitted to testify before the jury, her testimony was consistent with her Article 38.37 hearing testimony. She added, on cross-examination, that her family had not discussed filing a lawsuit against Henderson.

[13] Moreover, as the State argued during the hearing, the common facts of abuse including his statements about love, his rubbing of their vagina, and his using electronic devices to distract them, also go to establishing Henderson's identity, a separate permissible evidentiary purpose under Rule 404(b). *See* TEX. R. EVID. 404(b).

against a separate child victim. *See* TEX. R. APP. P. 38.1(i). But the trial court's limiting instruction was, by no means, general. It tracked the language of the statute, providing:

> You are instructed that if there was—if there is any testimony before you in this case regarding evidence of a separate sexual offense committed by the Defendant against a child who is not the complainant in this case, and if you find and believe beyond a reasonable doubt that the Defendant committed such other offense, if any was committed, you may consider the same in determining what bearing such evidence has, if it does, on relevant matters in this case, including the character of the Defendant and acts performed in conformity with the character of the Defendant.

Moreover, Henderson does not identify anything to rebut the presumption the jury followed the trial court's instruction. *See Thrift*, 176 S.W.3d at 224.

C.G. and A.F. also testified on different days and to different facts. C.G. specifically testified as to more graphic incidents involving Henderson's penis and Henderson making her touch him. A.F disclaimed any such actions by Henderson. Moreover, after C.G. and A.F. testified, Henderson testified on his own behalf, repeatedly and strenuously denying the allegations against him and suggested C.G.'s outcry was a result of his filing for divorce.

Based on the foregoing, the trial court could have reasonably determined the evidence was not so overwhelming as to distract the jury from the charged conduct. Thus, this factor weighs in favor of admission of the Article 38.37 evidence.

### iii.    Time to Develop Evidence

Henderson argues A.F.'s testimony was the same length as C.G.'s testimony. But C.G.'s testimony before the jury spanned approximately eighty-eight pages of reporter's record transcript, while A.F.'s testimony before the jury spanned just forty-two pages of 462 pages of transcript—or less than ten percent.[14] *See Fisk v. State*, 510 S.W.3d 165, 175 (Tex. App.—San Antonio 2016,

---

[14] Even including her duplicative testimony in the Article 38.37 hearing, A.F.'s testimony was still less than C.G.'s testimony.

no pet.) (rejecting contention testimony took inordinate amount of time where testimony consumed only eighteen percent of total testimony). Moreover, A.F. was one of thirteen witnesses. And the State's discussion of A.F. during its closing consisted of two paragraphs after an extensive discussion of her testimony by defense during closing.

This factor weighs in favor of admission of the Article 38.37 evidence.

### iv.  State's Need for Evidence

Henderson argues the State did not need A.F.'s testimony because C.G.—the alleged victim in the crime for which Henderson was indicted—testified at the trial as an adult at the age of 19. It is unclear why the victim's age at the time of trial matters, and Henderson does not identify any support for such a contention. *See* TEX. R. APP. P. 38.1(i). But Henderson is correct the State also had C.G. testify, an outcry witness testify, as well as multiple family members who testified C.G. told them about Henderson's actions. The State clearly did not need the evidence. Indeed, A.F.'s testimony arguably harmed the State's case as defense counsel during closing repeatedly referenced A.F.'s testimony as not credible, pointing to purported discrepancies between the testimony at trial and earlier statements made to interviewers, and an alleged effort to coordinate the testimony of C.G. and A.F. Moreover, other witnesses testified as to Henderson's abuse of A.F. including the children's grandmother.

Thus, this factor weighs against admission of the Article 38.37 evidence. But, taken together, the Rule 403 balancing factors show the trial court did not abuse its discretion by admitting the testimony of A.F.

### STATE'S USE OF FALSE OR MISLEADING TESTIMONY

Henderson argues the State violated his due process rights because it allowed A.F. to provide materially false or misleading testimony at trial. We disagree.

### A. Applicable Law

The State violates a defendant's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution if it uses materially false testimony to procure a conviction, regardless of whether the falsity is known to the State. *See, e.g.*, *Ukwuachu v. State*, 613 S.W.3d 149, 156 (Tex. Crim. App. 2020); *Ex parte De La Cruz*, 466 S.W.3d 855, 866 (Tex. Crim. App. 2015). *See generally Glossip v. Oklahoma*, 604 U.S. 226, 246 (2025) (comprehensively addressing due process claim based on false or misleading testimony). In examining such a claim, we first determine whether the testimony was false and, if so, whether it was material. *Ukwuachu*, 613 S.W.3d at 156. Absent one of these requirements, the claim fails. *See, e.g.*, *Ukwuachu*, 613 S.W.3d at 155; *De La Cruz*, 466 S.W.3d at 866.

To establish falsity, we decide whether the testimony, taken as a whole, gives a misleading or false impression to the jury. *Ukwuachu*, 613 S.W.3d at 156. The evidence does not need to demonstrate perjury, and the witness's good or bad faith is irrelevant. *Ukwuachu*, 613 S.W.3d at 156. The record however, "must contain some credible evidence that clearly undermines the evidence adduced at trial, thereby demonstrating that the challenged evidence is, in fact, false." *Ukwuachu*, 613 S.W.3d at 156. *See, e.g.*, *Ex parte Weinstein*, 421 S.W.3d 656, 666 (Tex. Crim. App. 2014) (finding mental health records demonstrated witness gave false testimony at trial about whether he had hallucinations); *Ex parte Chavez*, 371 S.W.3d 200, 208 (Tex. Crim. App. 2012) (concluding another person's confession to shooting victim during armed robbery demonstrated witnesses provided false testimony at defendant's trial by identifying defendant as shooter); *Ex parte Ghahremani*, 332 S.W.3d 470, 478–79 (Tex. Crim. App. 2011) (determining police reports indicating sexually-assaulted minor had been assaulted by others and had abused drugs demonstrated parents' testimony that minor's need for mental health treatment solely result of

defendant's abuse of minor to be false). To meet the falsity prong and undermine the truthfulness of the evidence adduced at trial, "definitive or highly persuasive evidence" is required. *Ukwuachu*, 613 S.W.3d at 157. Inconsistencies in testimony do not demonstrate falsity but instead go to the weight and credibility of the evidence to be afforded by the factfinder. *See De La Cruz*, 466 S.W.3d at 867–68, 870–71 (holding inconsistencies in testimony with respect to shooting did not support finding witness's testimony false because, among other things, jury entitled to reconcile conflicts in testimony).

False or misleading testimony is material if there is a reasonable likelihood that it could have affected the jury's judgment. *See, e.g.*, *Ex parte Reed*, 670 S.W.3d 689, 767 (Tex. Crim. App. 2023). This standard is the same as that for constitutional harmless error which provides we must reverse a conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction. *See* TEX. R. APP. P. 44.2(a); *see, e.g.*, *Ex parte Ghahremani*, 332 S.W.3d 470, 478 (Tex. Crim. App. 2011).[15] In essence, we ask "whether a correction could have made a material difference." *Glossip*, 604 U.S. at 253.

False testimony may be material if the witness's credibility is at the heart of the State's conviction. *See Glossip*, 604 U.S. at 248 (concluding false testimony provided by witness was material where testimony was only direct evidence of guilt of capital murder and jury's assessment of witness's credibility was necessarily determinative; explaining false testimony also supported prosecution theory, featured prominently in opening and closing statements, that witness was

---

[15] The Supreme Court describes the materiality standard as applicable if there is "*any* reasonable likelihood." *Glossip*, 604 U.S. at 246 (emphasis added) (quoting the leading false testimony case of *Napue v. People of State of Ill.*, 360 U.S. 264, 271 (1959)). The Texas Court of Criminal Appeals has identified the standard as "a reasonable likelihood" in various cases. *See, e.g.*, *Weinstein*, 421 S.W.3d at 665. We observe that Judge Finley of the Texas Court of Criminal Appeals explains "a reasonable likelihood" and "any reasonable likelihood" differ, and that the Court of Criminal Appeals ought to reconsider its formulation and consider whether it should adopt the *Napue-Glossip* formulation. *See, e.g.*, *Ex parte Warner*, No. WR-96,439-01, 2025 WL 2406434, at *2 (Tex. Crim. App. Aug. 20, 2025) (Finley, J., concurring). Regardless of the formulation, we do not believe Henderson's claim that A.F. provided false testimony is material.

harmless and testifying truthfully; and additional conduct by prosecution at trial undermined confidence in verdict). But inconsequential testimony does not meet the materiality standard. *See De La Cruz*, 466 S.W.3d at 869–71 (holding inconsistencies in number of times victim shot not consequential). In other words, if the jury could have discredited the testimony and still found a defendant guilty, the evidence is not material. *See De La Cruz*, 466 S.W.3d at 871 (explaining jury was aware of inconsistencies in testimony between witness and expert and nevertheless chose to convict defendant).

### B. Analysis

Henderson argues the State intentionally elicited false or misleading testimony from A.F. that contradicted her previous pre-trial statements and allowed her to state she did not remember her previous statements during cross-examination. Henderson identifies the following trial testimony from A.F. as specific examples of her contradicting earlier forensic interviews:

1. A.F. testified that during her twelfth birthday, Henderson tried to touch her, but nothing happened.
2. She testified that Henderson never made her touch his body.
3. She denied on cross-examination that Henderson, on one occasion, put her on the bed, took her clothes off, penetrated her, and then raped her.[16]

Henderson also argues his due process rights were violated when A.F. testified she could not remember what she had stated during earlier forensic interviews. Henderson contended, at oral argument, that these statements left a misleading impression that A.F. did not make the more

---

[16] Henderson also contends his due process rights were violated when the State did not correct the same false or misleading testimony during the Article 38.37 hearing. But Henderson cites no caselaw, and we are not aware of any, to support the proposition that an appellant can raise a due process claim based on purportedly false testimony for testimony made at an Article 38.37 hearing. *See* TEX. R. APP. P. 38.1(i). Indeed, even if such testimony were false, any such testimony would have been outside the presence of the jury and could not have affected the jury's judgment. *See Reed*, 670 S.W.3d at 767; *see also* TEX. R. APP. P. 44.2(a).

damaging statements during her forensic interviews or, at best, that she did not remember, and the jury was therefore deprived of making a credibility determination based on A.F. statements.

As to her twelfth birthday, A.F. testified that nothing happened both on direct and cross-examination because she moved away from Henderson. Later during cross-examination, she testified she did not remember what she said during her second forensic interview and in her very next answer she testified she *did* remember that during her second forensic interview she told the interviewer Henderson touched her on her vagina. As to the rape and the touching of Henderson's genitals, A.F. testified she did not remember saying during her second forensic interview that Henderson raped her and made her touch his genitals. She then testified those things did not happen. The State also elicited testimony from A.F. that she did not tell ChildSafe what happened during her initial interview with them, but she did tell them during her second interview. She also testified that at various times she denied something had happened with Henderson, explaining she did not know why she denied it, but admitted it may have been because she felt guilty and was still processing everything.

Here, there is nothing in the record to demonstrate A.F.'s testimony at trial, as opposed to her second forensic interview, was false or misleading. It is impossible to know. And the discrepancies between her trial testimony and her second forensic interview actually inure to his favor —that Henderson did not touch her on her twelfth birthday, did not make her touch his body, did not rape her, and did not penetrate her—were false or gave a false or misleading impression to the jury. *See Ukwuachu*, 613 S.W.3d at 157. Separately, Henderson does not identify any authority to support the contention that a person's statement that they do not remember could constitute definitive or highly persuasive evidence of false or misleading testimony. Nor are we aware of any. *See Losada v. State*, 721 S.W.2d 305, 312 (Tex. Crim. App. 1986) (finding nothing in record

showing witness's trial testimony was false where witness had given earlier contradictory statement to authorities but at trial admitted when he turned himself in he was scared and wanted to tell story in best light in order to protect himself).

Moreover, even if such testimony were false or misleading, there is no reasonable likelihood A.F.'s testimony made a material difference by contributing to Henderson's conviction. TEX. R. APP. P. 44.2(a); *Glossip*, 604 U.S. at 253; *Ghahremani*, 332 S.W.3d at 478; *Reed*, 670 S.W.3d at 767. Here, unlike in *Glossip*, A.F.'s testimony is not at the heart of Henderson's conviction: that would be C.G.'s extensive, damaging, and detailed testimony. *Glossip*, 604 U.S. at 248. Indeed, even in the absence of A.F.'s testimony, the jury could have convicted Henderson of continuous sexual abuse of C.G. based on the strength of the evidence against him for his actions against C.G. alone, including multiple witnesses testifying as to what happened to C.G. *See De La Cruz*, 466 S.W.3d at 871; *cf. Glossip*, 604 U.S. at 248.[17]

In fact, A.F's testimony arguably harmed the State because of the inconsistencies drawn out by defense counsel during cross-examination and reiterated during closing and the fact that it cast doubt on A.F.'s more serious sexual abuse allegations against Henderson. *See Glossip*, 604 U.S. at 248. But the jury appeared to ultimately determine any such inconsistencies in A.F's testimony were not especially consequential. *See Reed*, 670 S.W.3d at 768 (rejecting purportedly false testimony was material where trial attorneys presented jury with other testimony undermining purportedly false testimony and jury convicted defendant anyway); *De La Cruz*, 466 S.W.3d at 869–71 (rejecting false evidence claim because conflicting evidence was largely before jury that already reconciled any inconsistencies against defendant); *Ex parte Weinstein*, 421 S.W.3d 656,

---

[17] Moreover, C.G. and A.F.'s grandmother also testified as to Henderson's abuse of A.F. *See De La Cruz*, 466 S.W.3d at 871.

667 (Tex. Crim. App. 2014) (rejecting contention false testimony material where defense had ample ammunition at trial to argue witness was thoroughly discredited and dishonest who should not be believed, and did make such argument).

During oral argument, Henderson referred to our decision in *Cantu v. State* as support, specifically that "[a] lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth." *Cantu v. State*, 678 S.W.3d 331, 354 (Tex. App.—San Antonio 2023, no pet.) (cleaned up). *Cantu* quotes the Court of Criminal Appeals decision in *Valdez v. State* for that proposition.[18] No. AP-77,042, 2018 WL 3046403, at *3 (Tex. Crim. App. June 20, 2018).[19] In *Valdez*, the appellant also argued trial testimony gave the jury the false impression that the witness was credible. But, like here, the court rejected appellant's argument, explaining contradictory witness testimony during trial merely established a credibility question for the jury to decide. *Id.* at *9. The court also rejected the any such false impression was material because defense counsel drew out the inconsistencies during cross-examination and because the evidence of guilt was overwhelming. *Id. Cantu* is also distinguishable on its own facts for the same reasons. In *Cantu*, the appellant argued the child victim, A.C., and two others provided false testimony at trial about a cut on her anus. *Cantu*, 678 S.W.3d at 354. Cantu contended it was a lie because it was actually a perineal defect and not the result of abuse. *Id.* After the purportedly false testimony, a sexual assault nurse explained the cut was not due to abuse. *Id.* at 355. We rejected appellant's contention, explaining that his contention, at best, amounted to a discrepancy in testimony which appellant did

---

[18] The quote originates from the U.S. Supreme Court's seminal decision on false testimony-due process violations: *Napue v. Illinois*, 360 U.S. 264, 269–71 (1959).

[19] *Valdez* is an unpublished opinion, has no precedential value, and "must not be cited as authority" by this court. *See* TEX. R. APP. P. 77.3. We do not cite it here as authority but to provide context to why *Cantu* does not support Henderson's contention.

not show to be false or material. *Id.*[20] Accordingly, Henderson has failed to sufficiently demonstrate that the State violated his due process rights, and we overrule his final point of error.

**CONCLUSION**

Accordingly, the trial court's judgment is affirmed.

Lori Massey Brissette, Justice

DO NOT PUBLISH

---

[20] Moreover, we see no reason to impose a duty upon the State to do what Henderson himself strategically decided not to do, specifically to effectively impeach A.F. with the transcript of her second interview.